CAROLINA CASUALTY INSURANCE COMPANY, a North Carolina corporation, Appellee,

v.

PENNSYLVANIA THRESHERMEN & FARMERS' MUTUAL CASUALTY INSURANCE COMPANY, a Pennsylvania corporation, Appellant.

No. 14469.

United States Court of Appeals Third Circuit.

Argued Nov. 19, 1963.

Decided Feb. 6, 1964.

Gary F. Sharlock, Pittsburgh, Pa. (Mercer & Buckley, Pittsburgh, Pa., on the brief), for appellant.

William C. Walker, Pittsburgh, Pa. (Dickie, McCamey, Chilcote & Robinson, Pittsburgh, Pa., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and GANEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The liability insurance coverage problem in this appeal arises out of a collision between a tractor trailer and a

bus on January 28, 1957 near Altoona, Pennsylvania. The tractor trailer was owned by Kenneth E. Allison, a contract freight carrier by motor vehicle. It was insured against liability by appellant, Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Company. Just prior to the day of the accident, Allison had approximately 15,000 pounds of freight for delivery to Indiana, DuBois and Falls Creek, Pennsylvania. This amounted to about half a load. For the practical economic reason of going with a full load if possible, Allison telephoned Mr. Paxton of Kuhn Transportation Company, also a contract freight carrier by motor vehicle, to see if he had anything for delivery in the general area of his tractor trailer route. Kuhn had a policy of liability insurance of the same type as Allison's with appellee, Carolina Casualty Insurance Company. Mr. Paxton had about 19,000 pounds for Altoona and vicinity and arranged with Allison that the latter transport it.

Admittedly there was no written lease of the tractor trailer by Kuhn. Paxton said that on prior occasions he had leased Allison equipment under a written lease but that "This was a different type of arrangement. This vehicle was not operated under a lease to Kuhn Transportation." Allison was to receive 80% of Kuhn's revenues from its freight with Kuhn retaining the balance of 20%. The Kuhn freight was handled by Allison under Kuhn's Pennsylvania Public Utility Commission rights and Kuhn's bills of lading. The trial court found that this was a technical violation of the P.U.C. orders, but that "nevertheless," it is apparently an overlooked practice in the business because it is good business in that a licensed carrier would otherwise from time to time be compelled to haul less than truck load lots at an economic loss." Allison testified that he had no discussion concerning the Kuhn freight with Paxton other than the fact that "They * * * had to be delivered Monday morning. They had to be picked up Friday" and that Allison was going to be paid 80% of Kuhn's revenue there-

from. The driver of the tractor trailer was Richard Lanius, an Allison employee who was a trial witness. He said that he got all his instructions from Mr. Allison.

The route of the tractor trailer on the day of the accident was west from Hungerford, Pennsylvania, the Allison terminal. The Allison freight called for delivery west of the Kuhn freight destinations. The Kuhn freight was loaded last. It was after the Kuhn freight for Altoona had been delivered and while the tractor trailer was on its way to Portage, Pennsylvania, to deliver Kuhn freight there that the collision with the bus occurred.

Following the accident there was a dispute between the two above mentioned insurance companies as to which policy constituted the prime coverage for the tractor trailer with respect to the liability claims arising therefrom. The companies did agree that the negligence of Lanius had been the proximate cause of the accident. They also agreed that the various claims should be settled without prejudice to either company with ultimate responsibility for such payments to await future determination of their respective liabilities. The present suit was brought by Carolina under that agreement as was the counterclaim filed by defendant Pennsylvania Threshermen.

The case was tried to a jury. At the close of the evidence, the court did not think that there was any factual controversy for the jury to decide. Plaintiff agreed. The defense requested that the jury answer an interrogatory in a special verdict viz: "Was the driver, Richard Lanius at the time of the collision on the business of Kuhn Transportation Company, Inc. or on the business of Kenneth Allison or on the business of both Kuhn Transportation Company and Kenneth E. Allison?" The court accepted this and. in a short charge passed it along to the jury. The latter's answer to the interrogatory was "Both".

Plaintiff moved for judgment for the reasons:

"1. The jury having found that Richard Lanius was on the business of both Kuhn Transportation Company and Kenneth Allison, Plaintiff is entitled to judgment for the full amount sought, under the terms of the Agreement between the parties.

"2. Plaintiff is entitled to judgment for the full amount in any event and notwithstanding the verdict of the jury."

Defendant moved "for judgment in its favor on the Special Verdict in conformity with the jury's findings and the undisputed facts as disclosed at the trial." The trial court in a careful, well organized opinion, upon all the evidence and the special verdict of the jury, found in favor of the plaintiff for the stipulated amount. We think the judgment of the district court is sound in fact and in law.

■ Appellant, for its proposition that appellee's insurance afforded the primary coverage for the operation of the tractor trailer at the time of the accident, relies first on what it asserts was an "oral lease" of the vehicle from Allison to Kuhn. Its other contention is that the mandate of the Pennsylvania Utility Commission requiring carriers functioning under Commission rights to have liability insurance protecting the public, under the particular circumstances, establishes the Carolina policy as the responsible insurance.

With respect to the lease argument, the district court properly concluded from the evidence that "The parties themselves did not regard their transaction as a leasing arrangement. * * * Kuhn simply hired Allison to haul a cargo for two of its customers."

■ On the second point, we are dealing with a dispute between the two insurance companies concerned over the identical language of their contracts with their insureds. This is not a suit by a member of the public against either or both freight carriers for damages as

a result of the negligence of Lanius. We agree with the district court that the Public Utility Law compelling a carrier to accept responsibility when its operating rights are being used would be meaningful in that sort of action. Both Kuhn and Allison filed certificates of insurance with the P.U.C. under the Pennsylvania Public Utility Law. These were " * * * to provide the coverage or security for the protection of the public * * *." They certified that "The liability of the Company extends to all losses, damages, injuries or deaths whether occurring on the route or in the territory authorized to be served by the Insured or elsewhere." Under those Certificates Kuhn and Allison were bound to protect the public through their insurance. But that public security protection is not material in our situation which depends entirely upon the insurance contract terms identical in both policies. Those terms which decide the coverage problem between appellant and appellee, do not touch the security Certificates which, irrespective of coverage, furnish the statutory protection to the public. Neither of the Certificates has any bearing on the pertinent provisions of the two policies which govern this case. National Mutual Ins. Co. of District of Columbia v. Liberty Mutual Ins. Co., 90 U.S.App. D.C. 362, 196 F.2d 597, 599 (1952); Prickett v. Hawkeye-Security Insurance Co., 282 F.2d 294, 83 A.L.R.2d 1224 (10 Cir. 1960); Travelers Mut. Casualty Co. v. Herman, 116 F.2d 151, 153 (8 Cir. 1940); Bennett v. Preferred Acc. Ins. Co. of New York, 192 F.2d 748 (10 Cir. 1951). The terms, while somewhat complicated, spell out responsibility upon Pennsylvania Threshermen, the company which directly insured the owner of the tractor trailer and his driver thereof.

Under the particular endorsements which admittedly pertain to Kuhn and Allison, with reference to Kuhn, coverage of the named insured does not apply "(a) except with respect to an employee of the named insured, to any person * * * or to any agent or employee thereof, engaged in the business

of transporting property for the named insured or for others * * *. * * * provided, however, a driver or other person furnished to the named insured with an automobile hired by the named insured shall not be deemed an employee of the named insured: * * *."

"Hired Automobile", as defined in 6 (b) "means an automobile used under contract in behalf of, or loaned to, the named insured * * *."

Paragraph 1(d) of the endorsements makes it even more plain that the Kuhn policy did not include Allison and his driver. That states that the insurance does not apply " * * * with respect to any hired automobile to the owner or any lessee of such automobile, or to any agent or employee of such owner or lessee, if the accident occurs (1) while such automobile is not being used exclusively in the business of the named insured * * *."

Under the "Other Insurance" paragraph it is provided that " * * * with respect to * * * any non-owned automobile, the insurance shall be excess insurance over any other valid and collectible insurance."

While the Allison policy is identical with Kuhn's, the complete differentiation between them is that in Allison we are dealing with a named insured who owns the automobile involved, and not with a hired vehicle. Lanius, the driver, was an employee of the named insured. He is, as we have seen above, specifically included in the policy. In connection with the coverage of Lanius, it should be noted that the manager of the home office automobile underwriting department of Pennsylvania Threshermen on cross-examination testified as follows:

"Q. Now, your exclusions start here, but the employee of the named insured in this case, Richard Lanius, is not excluded by any of these, is he?

"A. It appears that he would be a named insured.

"Q. Certainly. He is specifically excepted from the exclusions, isn't he?

"A. Yes, sir."

Under the facts as justifiably arrived at in the district court there is no valid controversy regarding the decisional law. Appellant stresses Kimble v. Wilson, 352 Pa. 275, 42 A.2d 526 (1945). The situation there differed in vital aspects from the facts established in this litigation. The result is there is no valid ground for presumption in this matter of a lease from Allison to Kuhn. The answer of the jury itself to the sole question submitted to it, directly negated the lease theory by holding that the tractor trailer was being operated on behalf of both Allison and Kuhn.

Where there are two policies and one vehicle, as in this appeal, the owner's policy, generally speaking, constitutes the direct coverage under the type of insurance before us. See Grasberger v. Liebert & Obert, 335 Pa. 491, 6 A.2d 925, 122 A.L.R. 1201 (1939). And where as in this appeal the non-owner's policy excludes the owner and his driver from coverage the owner's policy is primarily responsible. Nationwide Mutual Ins. Co. v. Fidelity & Cas. Co. of New York, 188 F.Supp. 377 (W.D.Pa.1960); rev. other grounds, 286 F.2d 91 (3 Cir. 1961); Continental Casualty Co. v. Curtis Pub. Co., 94 F.2d 710 (3 Cir. 1938); Employers' Liability Assur. Corp., Ltd. v. Fireman's Fund Ins. Group, 104 U.S.App. D.C. 350, 262 F.2d 239 (1958); American Surety Company of New York v. Canal Ins. Co., 258 F.2d 934, 936 (4 Cir. 1958). See also American Automobile Ins. Co. v. Indemnity Ins. Co. of North America, 108 F.Supp. 221 (E.D.Pa.1952), affd. 228 F.2d 622 (3 Cir. 1956). The opinion in Exchange Casualty and Surety Co. v. Pennsylvania Threshermen and Farmers' Ins. Co., 111 Pittsburgh L.J. 450 (C.P.Allegheny Co. 1963) is of no help on the factual problem facing us here.

The judgment of the district court will be affirmed.