28095. MINTER *et al. v.* KENT.

Decided February 24, 1940. Rehearing denied March 18, 1940.

*Foley & Chappell, Albert W. Stubbs Jr.,* for plaintiffs in error.
*Love & Fort,* contra.

Sutton, J. J. M. Kent brought suit against J. E. Minter and others, doing business as Clay Products Exchange, to recover damages because of injuries sustained by him on account of the alleged negligence of the defendants. The jury returned a verdict in favor

of the plaintiff, and the exception is to the overruling of the defendants' motion for new·trial. The evidence introduced on the hearing was substantially as follows: The plaintiff, on August 29, 1938, between 6 and 6:30 p. m., was driving his automobile about fifteen miles per hour south on Brittingham Street, or Silk Shirt Alley, an unpaved street in the town of Girard, Alabama, and was approaching an earth fill over which the roadway was rough and narrow, with all of which conditions he was familiar. He was driving, as was his habit, with his left arm resting in the open window of the left door of his automobile, and his elbow projected four or five inches out of and beyond the window. The outer edge of the running board of the car was about a foot from his arm. As he approached the fill, and began to traverse the narrow rough roadway, which was, however, sufficient to permit two cars to pass without striking, the plaintiff saw, approaching from the opposite direction and about fifty or sixty yards away, a Ford V-8 truck with dual wheels and red cab. He saw that it was traveling twenty-five or thirty miles per hour, that it was farther over on his side than it should have been, the left wheels being a foot over the center of the roadway, that it was shifting from one side of the road to the other, "or back-swaying," that the words, "Clay Products Exchange," were painted on its side, that the wide, flat, truck body extended beyond the rear wheels about a foot, and that the truck failed to reduce its speed. The plaintiff pulled to his right as far as possible and almost came to a dead stop. The front part of the truck passed, but the back part of the body, the part that extended beyond the rear wheels, struck his arm and broke it. The truck did not strike his car, and there was in no wise any contact between the two vehicles. The plaintiff assigned several reasons for his failure to withdraw his arm from the window. It was his habit to drive that way, a method particularly suitable to the Dodge car, as he stated; he had seen many people driving in that manner, and the situation developed so quickly he didn't think about his arm being in the window; that his Dodge coupé sat up high and he didn't have the least idea that the truck would hit him because he was over as far as he could possibly get, and it was his judgment that it was going to pass him in safety; that he had passed cars there before and believed his arm was perfectly safe. The plaintiff could not identify the driver of the truck.

There was testimony on behalf of the defendants that they operated two plants for the manufacture of brick, one known as the Dixie Brick Company at Dixieland, Alabama, about five miles south of Girard, Alabama, and another, Bickerstaff Brick Company, about six and one-half miles south of Girard; that on August 29, 1938, the Bickerstaff plant, at Brickyard, Alabama, filled four orders; two of these were delivered at the plant and were hauled away by the purchasers on their own trucks; that the other two orders were delivered by Clay Products Exchange, the first of these leaving the plant at 10:15 a. m. and traveling to the south, and not in the direction towards the scene of the accident, and the other, leaving the plant at 1:10 p. m. and being consigned to a point seven miles north of Columbus, by way of the Chattahoochee river bridge at Girard, connection with Columbus, Georgia, this delivery being completed by 4 p. m., both of these deliveries being made by a blue truck; that the plant closed at 5 p. m.; that this Bickerstaff plant had no red truck in use or on its yard, and no other truck in the business of Clay Products Exchange left the plant that day except the one blue truck on the two missions above mentioned; that the Dixie plant at Dixieland filled three orders on August 29, 1938, and in each case the purchaser took delivery at the plant and hauled the brick away in his own truck; that no truck was used by the plant on the day in question and the plant closed at 5 p. m.; that the trucks of Clay Products Exchange at the time mentioned consisted of three blue trucks and one red truck. George Hale Bickerstaff, one of the defendants, testified that on August 29, 1938, the red truck was not used at all, and that it did not leave the yard that day, and J. F. Bickerstaff, another defendant, testified that if any truck of Clay Products Exchange was on the road after 5 p. m. on the day in question it was not in the scope of the company's business.

With reference to the question of identification of the truck which struck the plaintiff the following testimony was also adduced: Eddie Howard, who witnessed the accident, testified that he saw a loaded truck come by his house, a red cab with "Clay Products Exchange" written on it, a Ford V-8 truck, and had seen trucks of the Clay Products Exchange pass along that road for a long time. Albert Mack gave similar testimony. George Hale Bickerstaff, one of the defendants and in charge of the plant at Dixie-

land, testified that he knew of no one else running trucks with the name of Clay Products Exchange, and nobody had authority to do so, and that if trucks were on the road in the vicinity of the accident with such name on them they were trucks of the Clay Products Exchange and belonged to the company; that "I don't know whether or not our red truck went to your job [referring to counsel for plaintiff] about that time. I think we were shipping you brick about that time. . . The red truck served both plants, went from one to the other. . . I was supplying mighty few jobs in Columbus about that time. . . I can't say we were not supplying your job in Columbus on the 29th and sending broken packages out." Hugh Bickerstaff, another defendant and who was on duty at the Bickerstaff Brick Company, testified that "We close usually at about 5 p. m. Sometimes we remain open later and send out loads of brick. The red truck serves both our plants. . . I do. not know where the red truck was on August 29th. I don't remember seeing it at all that day. We sometimes sent small orders to Columbus. We did not send them late by our trucks. I would say this, reiterate what I said, that if a truck were loaded, and one of our trucks, after closing time, I would know about it. There were no trucks around here with 'Clay Products Exchange' on them but our trucks. I know of no sale of our trucks with our name painted on them. I certainly would not attempt to say how many loads went out on any particular day unless I referred to this record here." Floyd E. Day, a policeman, testified that he went to the hospital to see the plaintiff on the afternoon of the accident, and that he said a "brick company" truck ran into him, a red truck loaded with brick; that he then went to the office of the defendants and looked over their records, and did not find a V-8 truck with red cab at the yard of either of the plants and that they did not show him one. With reference to the question of identity of the driver of the truck which struck the plaintiff the following testimony was in evidence: The plaintiff testified that, while he could not identify him, he was a mulatto negro. George Hale Bickerstaff testified that Buddy Johnson was the driver of the red-cab truck used in their business, and was a real bright mulatto negro. Hugh Bickerstaff testified to the same effect.

The plaintiff introduced in evidence statutes of the State of Alabama, as pleaded, to the effect that "The territory contiguous

to a highway not comprising a business district when the frontage of such highway for a distance of three hundred feet or more is mainly occupied by dwellings and buildings in use for residence" is a residence district; that the maximum rate of speed in such residence district is twenty miles an hour; that upon all highways of sufficient width except upon one-way streets the driver of a vehicle shall drive the same upon the right half of the highway; that drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving the other at least one half of the main traveled portion of the roadway as nearly as possible; all of which provisions it was alleged in the petition the defendants had violated.

The grounds of the motion for new trial, besides the general grounds, are that the uncontradicted evidence shows that the plaintiff by the exercise of ordinary care could have avoided the consequences to himself of the defendants' negligence, and, therefore, he was not entitled to recover; that the alleged tort having been committed in the State of Alabama, and no Alabama statute as to the conduct of the plaintiff having been alleged or proved, the common law governs the conduct of the plaintiff, and that the undisputed evidence shows that he was guilty of negligence that contributed to his injury, and, therefore, under the common law he was barred from recovery; that there was no evidence identifying the truck which struck the plaintiff's arm or that the driver thereof was their servant and acting in the scope of his employment at the time of the plaintiff's injury, and that the plaintiff failed to prove his case and was not entitled to recover. These grounds may be treated together.

The questions here presented are: Was the truck which struck the plaintiff's arm the property of the defendants? Was the driver of the truck the servant of the defendants and engaged at the time of the injury in the prosecution of their business and in the scope of his employment? Was the plaintiff guilty of any negligence which barred recovery from the defendants? It is true, as contended by plaintiffs in error, that the alleged tort having been committed in the State of Alabama, and no statute of that State governing the conduct of the plaintiff having been pleaded or proved, it will be presumed that the common law was in force in that State (*Southern Railway Co.* v. *Cunningham,* 123 *Ga.* 90,

50 S. E. 979; *Lay* v. *N., C. & St. L. Railway Co.*, 131 *Ga.* 345, 62 S. E. 189, 19 L. R. A. (N. S.) 966, 15 Ann. Cas. 1097; *Hines* v. *Evitt*, 25 *Ga. App.* 606 (3), 103 S. E. 865) ; that the decisions of this State interpreting the common law will be followed (*Lay* v. *N., C. & St. L. Railway Co.*, supra; *Slaton* v. *Hall*, 168 *Ga.* 710, 148 S. E. 741, 73 A. L. R. 891; *Bolton* v. *Bluestein*, 55 *Ga. App.* 782, 191 S. E. 388) ; and that under the common law, as construed by the decisions of the courts of this State, contributory negligence on the part of the plaintiff bars any right to recover (*Tuten* v. *Atlantic Coast Line R. Co.*, 4 *Ga. App.* 353 (2), 61 S. E. 511; *Hines* v. *Evitt*, supra). Hence, the plaintiff in the present case, to entitle him to recover, must show that he was free from any negligence in respect to his injury. *Rush* v. *Southern Railway Co.*, 19 *Ga. App.* 521 (91 S. E. 898).

It is contended by the plaintiffs in error that the failure of the plaintiff to remove his arm from the window amounted to negligence contributing to his injury, and that, therefore, he can not in any event recover. We can not say as a matter of law that the plaintiff was negligent in the manner alleged, but, on the contrary, we think that under the circumstances shown by his testimony the jury would be authorized to find that an emergency existed and that he was not negligent. If, as the uncontradicted evidence showed, the oncoming truck, traveling at twenty-five to thirty miles per hour, was only fifty or sixty yards away when the plaintiff saw it, or in the exercise of ordinary care should have seen it, the time elapsing until the arm of the plaintiff was struck was less than five seconds. In that brief interval he succeeded in getting to the right of the road as far as safety would permit, apparently at such distance that à passing truck, properly driven, would not come in contact with his car. But it appears that because of the rough roadway and the speed of the truck its rear end was swaying, and that in passing it struck the arm of the plaintiff as it rested upon the open window. Evidently it did not occur to the plaintiff that his arm was in danger with the outer edge of the running board a foot from his arm. He had, without mishap and in the same manner, passed many cars on the same roadway. But whether or not he should, while turning to the right of the roadway to escape from the swaying truck, have also realized within less than five seconds that to avoid injury to his arm he should withdraw it

into the car is a consideration about which we think reasonable men might differ. It was for the jury to determine whether an emergency existed, in which case the plaintiff, under well-established law, could not be held to the exercise of that care and circumspection which ordinarily would be required of him. We think that the jury was authorized to find that the plaintiff was injured by the negligence of the driver of the truck, and that he was not guilty of any negligence contributing to his injury.

But to recover the plaintiff was also required to show that the relationship between the defendants and the driver of the truck was that of master and servant, and that at the time of his injury the driver was in the prosecution of the defendants' business and in the scope of his employment. Code, § 105-108; *Greeson* v. *Bailey,* 167 *Ga.* 638 (146 S. E. 490) ; *Rape* v. *Barker,* 25 *Ga. App.* 362 (103 S. E. 171). There was no direct evidence as to the ownership of the truck, as to the identity of the driver, or that at the time of the plaintiff's injury the driver was acting in the prosecution of the defendants' business and in the scope of any employment with them. There was, with respect to the truck, evidence that it had painted upon its side the words, "Clay Products Exchange," the name under which the defendants conducted their business, and testimony from one of the defendants that he knew of no one else running trucks so marked, and that if any truck with the words "Clay Products Exchange" painted on it was on the road in the vicinity of the accident such a truck belonged to the defendants. While officials of the company testified from records that they had only one red-cab truck, and that it made no delivery on August 29, 1938, the date of the accident, from either plant, and one of the defendants who was on duty at the Bickerstaff Brick Company testified that the plant closed down at 5 p. m., he stated that it sometimes remained open later and sent out loads of brick, that the red truck served both plants, and that he did not know where it was on August 29, 1938, and did not remember seeing it that day, and that he would not attempt to say how many loads went out on any particular day except by reference to the plant's records. A police officer testified that after the accident he went to the office of the defendants and did not find a V-8 truck with red cab at either plant, and that he was not shown any. George Hale Bickerstaff, one of the defendants, in reply to questions from one of counsel for

the plaintiff, testified: "I don't know whether or not our red truck went to your job about that time. I think we were shipping you brick about that time. . . The red truck served both plants, went from one to the other. . . I was supplying mighty few jobs in Columbus about that time. Business was kinder slow. I think we were supplying your job. . . I don't recollect what jobs we were supplying in Columbus at that time. I can't say we were not supplying your job in Columbus on the 29th and sending broken packages out."

While there was testimony from the defendants that one Buddy Johnson was the only driver of their red truck and that he was not on duty on August 29, 1938, it was also testified that he was a bright mulatto negro. The driver of the truck which struck the plaintiff was, according to his testimony, a mulatto negro. The police officer who visited the plaintiff at the hospital shortly after the accident testified without objection that at that time the plaintiff told him that the truck was hauling a load of brick. It is well settled that circumstantial evidence may sometimes outweigh positive testimony. *Bowie* v. *Maddox,* 29 *Ga.* 285 (74 Am. D. 61); *Jefferson Standard Life Insurance Co.* v. *Bentley,* 55 *Ga. App.* 272, 279 (190 S. E. 50). "The rule that the uncontradicted testimony of unimpeached witnesses can not lawfully be arbitrarily disregarded 'does not mean that the jury are obliged to believe testimony which under the facts and circumstances disclosed they in fact discredit, but means that they are to consider the testimony of every witness who is sworn, and not arbitrarily disregard the testimony of any witness.'" *McRae* v. *Wilby,* 59 *Ga. App.* 401 (1 S. E. 2d, 77). It is a significant fact, which the jury would be authorized to take into consideration, that at no time during the trial of the case did the defendants offer as a witness in their behalf the bright mulatto negro who admittedly worked for them and exclusively drove their only red truck, and who might easily have been able to inform the jury as to his whereabouts and actions on the day in question. "Where a party has evidence in his power and within his reach, by which he may repel a claim or charge against him, and omits to produce it, or, having more certain and satisfactory evidence in his power, relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim is well founded; but this presumption may be rebutted."

Code, § 38-119. See also *S., F. & W. Ry.* v. *Gray,* 77 *Ga.* 440, 443 (3 S. E. 158) ; *Stevenson* v. *State,* 83 *Ga.* 575, 581 (10 S. E. 234) ; *Atlanta & West Point Railroad Co.* v. *Holcombe,* 88 *Ga.* 9 (13 S. E. 751).

Whether the facts and circumstances above enumerated on the question of ownership of the truck and identity of its driver, and as to whether or not he was acting in the prosecution of the defendants' business and in the scope of his employment at the time of the injury, were sufficient to overcome the testimony of the defendants in those respects, were matters for the determination of the jury. In *Barnum & Bailey Shows Inc.* v. *Himmelweit,* 17 *Ga. App.* 85 (86 S. E. 96), the plaintiff, as shown by the record, while watching the unloading of a circus train, was run into and injured by a circus wagon being driven away from the circus train. The wagon had upon it the name of Barnum & Bailey Shows, but there was no direct evidence as to the ownership of the wagon, the identity of the driver, or that he was acting in pursuance of the business of Barnum & Bailey Inc., or in the scope of any employment with that corporation. In affirming the judgment of the trial court, after suit was brought by the injured party, the court held: "The ownership of the wagon which inflicted the injury sued for, as well as the agency or connection of the driver thereof with the defendant in the court below, might be inferred by the jury from facts and circumstancs in proof, as well as from direct testimony, and the court did not err in so charging." Under the evidence and the law above set forth the jury was authorized to return a verdict in favor of the plaintiff, and the court did not err in overruling the motion for new trial. *Clower* v. *Western Union Telegraph Co.,* 18 *Ga. App.* 775 (90 S. E. 730), cited and relied on by plaintiffs in error is distinguishable on its facts. It was there held: "The plaintiff sued the Western Union Telegraph Company, alleging that he was run over by a bicycle messenger-boy in the service of the company. He did not know how he was hurt, and his witness testified that he (the plaintiff) was struck by 'a boy on a wheel;' that 'the boy had a blue uniform and a cap of the Western Union Company;' that he 'did not know whether it was the Western Union Company's wheel or not, but the rider had a uniform on.' *Held,* that the evidence did not meet the allegations of the petition, and was not sufficient to require a submis-

sion of the case to the jury." If in that case the boy on the wheel had not only worn a blue uniform like that worn by messengers of the Western Union Telegraph Company at that time but had also upon his person a telegram which he was in the process of delivering, a different case, analogous to the one here under consideration, would have been presented, and would have been sufficient to require a submission to the jury on the question whether or not he was the servant of the defendant and in the prosecution of its business and within the scope of his employment. *Taylor* v. *Morgan,* 54 *Ga. App.* 426 (188 S. E. 44), also cited and relied on by plaintiffs in error is likewise distinguishable on its facts on the question of negligence of the plaintiff. There the plaintiff was riding on the running board of the left side of an automobile with his body protruding beyond the running board. This court held that under the facts of the case the plaintiff was not entitled to recover, but also held that one riding on the running board of a car is not necessarily negligent.

*Judgment affirmed. Stephens, P. J., concurs. Felton, J., disqualified.*