Iowa National Mutual Insurance Company, a Corporation, Plaintiff-Appellee, v. The Fidelity & Casualty Company of New York, Defendant-Appellant.

Gen. No. 64–97.

Second District.

October 1, 1965.

Miller, Thomas, Hickey & Collins, of Rockford (Edwin T. Powers, Jr., of counsel), for appellant.

Fearer & Nye, of Oregon (Gerald W. Fearer, of counsel), for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

This case involves a dispute between two insurance companies concerning their respective liabilities aris-

ing out of an automobile accident. It was tried before the court upon stipulated facts. The plaintiff, Iowa National Mutual Insurance Company, insured Mrs. Warner Greene, the owner of a 1951 Packard automobile. The defendant, The Fidelity & Casualty Company of New York, insured her husband, Warner Greene, under a "nonowner policy," which policy was taken out and filed to provide proof of compliance with the Financial Responsibility Law. (Ill Rev Stats 1963, c 95½, § 7–301, et seq.) Mr. and Mrs. Greene resided together in the same household as husband and wife.

On October 12, 1957, while both of the above policies were in force, Warner Greene drove his wife's automobile and was involved in a collision with another automobile. Two occupants of the other car were killed, and three more were injured.

The liability of Warner Greene was not questioned, and the plaintiff negotiated and paid the sum of $61,750 in settlement of all the claims arising out of the accident. The bodily injury policy limits of plaintiff's policy were $50,000 for each person and $100,000 for each occurrence; those of the defendant were $25,000 and $50,000.

The plaintiff, after paying the settlement figure, brought this suit to seek contribution of one-half thereof, or $30,837.50, from the defendant. The trial court entered judgment in favor of the plaintiff for $12,335.

Both insurance policies contained "other insurance" clauses, which were identical in the pertinent parts, and their purpose was to limit the coverage or liability under the policies in the event there was other insurance also covering the loss. The defendant contends that under its "other insurance" clause, its liability is limited solely to "excess" insurance over other valid and collectible insurance; and that since plaintiff, in its settlement, did not exceed the limits of its

liability, the defendant is not liable for any part thereof. The defendant also argues that the plaintiff is the primary insurer, and as such, had a "pro rata" clause relating to "other insurance" providing that it would not be liable for any greater proportion of the loss than its policy limits bear to all valid and collectible insurance against such loss; that the excess provision of defendant's policy was binding upon the plaintiff, as the primary insurer; and that, therefore, the "pro rata" clause in the plaintiff's policy does not affect its liability as the secondary insurer.

Although this view has been effectively criticized (e. g. Lamb-Weston, Inc. v. Oregon Auto Ins. Co., 219. Ore 110, 341 P2d 110, 115–119 (1959)), as a futile attempt to try to resolve which came first, the hen or the egg; and as founded upon circuitous reasoning to determine which is the primary policy and which the "other insurance" provision, and ipse dixit, which is to yield to the other, the view is not without substantial authority. Continental Cas. Co. v. American Fidelity & Cas. Co., 275 F2d 381 (CA 7, 1960); Mc-Farland v. Chicago Exp., Inc., 200 F2d 5 (CA 7, 1952); 7 Am Jur2d (Automobile Insurance), Sec 202, p 544, 76 ALR2d 502, 505.

Various reasons are assigned for this conclusion under a wide spectrum of factual patterns with respect to the wording of the policies involved, the status of ownership or nonownership of the vehicles involved in the accident by the then driver, etc., yet in face of all these factors, it is stated in 7 Am Jur2d, supra, at 544: ". . . where one of the policies contains an 'excess insurance' clause and the other a 'pro rata' clause—and the 'excess insurance' clause pertains to nonownership coverage, the conclusion is generally reached—no matter how various the reasoning adopted in support of it in the different cases may be—that the policy issued to the owner of the vehicle is the

'primary' policy, and the company issuing it is liable up to the limits of the policy without apportionment."

■ The argument of the defendant in the case at bar is premised in the first instance upon the proposition that plaintiff's policy contained a "pro rata" other insurance clause, and that its policy contained an "excess" insurance clause. The problem, however, cannot be solved so simply; and the defendant's contention must be tested by the overall provisions of the respective policies of both plaintiff and defendant. The extent of the limitation of their respective liabilities is initially determined by the construction of the language used in each respective policy. Continental Cas. Co. v. American Fidelity & Cas. Co., supra, at 384; McFarland v. Chicago Exp., Inc., supra, at 7; Zurich General Acc. & Liability Ins. Co. v. Clamor, 124 F2d 717, 720 (CA 7, 1941).

Plaintiff's "other insurance" clause provides:

> "If the insured has other insurance against a loss covered by Part 1 of this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or nonowned automobile shall be excess insurance over any other valid and collectible insurance."

It is conceded that "the insured", as used above in the plaintiff's policy, included Mr. Greene under the circumstances of the case. It is also apparent that the 1951 Packard he was driving, was not, under the policy, a "temporary substitute automobile or nonowned automobile." Thus, the provision of plaintiff's policy relating to excess insurance is not applicable,

301

and the pertinent provision thereof is the "pro rata" other insurance clause, which specified under the circumstances of this case, that if Mr. Greene had other insurance covering the loss, the plaintiff would not be liable for a greater proportion of such loss than its applicable liability limits bore to all applicable liability limits of all valid and collectible insurance against such loss.

The defendant's policy provides in part:

> "This insurance shall be excess insurance over any other valid and collectible insurance for Bodily Injury Liability for Property Damage Liability and for Automobile Medical Payments."

The defendant, in asserting that its policy affords excess coverage only, relies on this clause. However, under "Conditions (20)" of the "Insuring Agreements" of defendant's policy, it is provided as nearly as we can determine from the somewhat illegible copy made a part of the record, as follows:

> "Other Insurance. Except under coverage C, if the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declaration bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, under coverages A and B the insurance with respect to temporary substitute automobiles under Insuring Agreement IV or other automobiles under Insuring Agreement V shall be excess insurance over any other valid and collectible insurance."

Coverages A and B relate to bodily injury and property damage liability respectively: Coverage C relates to medical payments.

302

The 1951 Packard owned by Mr. Greene's wife was not a temporary substitute automobile under Insuring Agreements IV of defendant's policy which provides (subject to the illegibility above noted): "(3) Temporary Substitute Automobiles—under coverages A and B and under division 1 of coverage C, an automobile not owned by the named insured or his spouse if a resident of the same household, while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing loss or destruction." Neither was it an "other automobile" under Insuring Agreement V, which requires for its application that an automobile owned by the insured or his wife is covered by the policy; and the coverage applicable to the designated automobile is likewise applicable to other automobiles, subject to certain nonapplicable provisions. The policy is by its express terms a "Non-Owner Policy" and does not cover any designated automobile. Thus, Insuring Agreement V is not applicable to the coverage provided Mr. Greene under defendant's policy.

■■ The portion of the "Insuring Agreements" of defendant's policy remaining applicable to the bodily injury and property damage liability is the provision for "pro rata" coverage. It purports to except the aforesaid temporary substitute automobiles and other automobiles only from the provisions of the "pro rata" coverage; it is in direct conflict with the provision contained elsewhere in the policy providing that the coverage shall be "excess insurance" only. If ambiguity or uncertainty results from the language used in an insurance contract, it is a basic rule of construction that all uncertainty should be resolved in favor of the insured. Caster v. Motor Ins. Corp., 28 Ill App2d 363, 366, 171 NE2d 425 (4th Dist 1961); 22 ILP, Insurance, Sec 149, p 195. If an insurance contract

contains inconsistent or conflicting clauses, that clause which affords the greater or more inclusive benefit for the insured will govern. Mosby v. Mutual Life Ins. Co. of New York, 405 Ill 599, 607, 92 NE2d 103 (1950); Illinois State Trust Co. v. Employees Life Co., 8 Ill App2d 455, 458, 131 NE2d 789 (4th Dist 1956); 7 Am Jur2d (Automobile Insurance), Sec 2, p 294.

█ We are of the opinion that the provision of defendant's policy providing pro rata coverage is applicable in the case at bar. Thus, we find that there were two insurance policies in force at the time of the accident, each of which provided for pro rata coverage in the event of other valid and collectible insurance covering the loss in question. There is no conflict between the two policies: each insurance company is liable under its respective policy for that proportion of the total loss that its applicable limits bears to the total applicable limits of both policies.

Our conclusion is further sustained by the fact that the defendant, by his prior conduct, had brought himself within the provisions of the Financial Responsibility Act. (Ill Rev Stats 1963, c 95½, § 7–301, et seq.) Defendant's policy was taken out to comply with the provision of the Act, and it must conform to the requirements thereof and is subject to all of its provisions. (Ill Rev Stats 1963, c 95½, § 7–317(d)). The "pro-rata" clause contained in defendant's policy is consistent with the coverage required by the Act and is specifically authorized by the Act. (Ill Rev Stats 1963, c 95½, § 7–317(i).) See also: Celina Mut. Cas. Co. v. Citizen's Cas. Co., 194 Md 237 (1950), 71 A2d 20; 7 Am Jur2d (Automobile Insurance) Sec 200, p 543.

█ █ The Financial Responsibility Act was enacted not merely to regulate the rights of operators and owners of motor vehicles, but also to control the obligations and rights of insurers issuing policies there-

under. Policies issued pursuant to the Act should be liberally construed to protect the general public from loss caused by the negligence of the insured. Behaney v. Travelers Ins. Co., 121 F2d 838 (CA 3, 1941); 7 Am Jur2d (Automobile Insurance), Sec 7, pp 299, 300; Annotation 29 ALR2d 817.

It was thus proper for the trial court to enter judgment based upon apportionment of the loss between plaintiff and defendant in relation to the limits of their respective policies. No question is raised as to the manner employed in arriving at the proper apportionment, and the judgment is, accordingly, affirmed.

Judgment affirmed.

ABRAHAMSON, P. J. and MORAN, J., concur.