FLOAT–AWAY DOOR COMPANY and
National Surety Company,
Appellants,

v.

CONTINENTAL CASUALTY COM-
PANY, Appellee.

No. 22879.

United States Court of Appeals
Fifth Circuit.

Dec. 1, 1966.

Rehearing Denied March 3, 1967.

702

C. B. Rogers, T. J. Long, Edward E. Dorsey, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for appellant, Float-Away Door Co.

Ben L. Weinberg, Jr., William Louis Spearman, Long, Weinberg & Ansley, Atlanta, Ga., for appellant, National Surety Corp.

Charles A. Moye, Jr., Gambrell, Harlan, Russell & Moye, Atlanta, Ga., for appellee; E. Smythe Gambrell, Harold N. Hill,

Jr., Floyd E. Siefferman, Jr., Atlanta, Ga., of counsel.

Before RIVES, BELL and THORN-BERRY, Circuit Judges.

RIVES, Circuit Judge:

This appeal is from the denial of appellants' and the grant of appellee's motion for summary judgment in a declaratory judgment action concerning the coverage of two liability insurance policies.[1] The material facts may be summarized as follows:

Dance had contracted with Float-Away to transport a shipment of doors from Float-Away's plant in Atlanta, Georgia, to Universal Manufacturing Company (Universal) in Ohio. Dance left one of its trailers at Float-Away's plant where it was loaded by Float-Away, picked up by Dance and inspected and sealed at Dance's Atlanta terminal, and transported to Cincinnati, Ohio. In Cincinnati, Dance turned the trailer over to another carrier which transported it to the premises of Universal in Camden, Ohio. There, in the course of the unloading operation, Barrett, an employee of Universal, was injured when some of the doors fell from the trailer. Barrett filed suit against Float-Away and Dance, alleging that both parties had been negligent in the loading and inspection of the trailer. Float-Away and Dance then called upon Continental to defend them in that suit, claiming that both were covered under Continental's policy. Continental acknowledged that its policy covered Dance, but refused to defend Float-Away, denying that Float-Away was an additional insured within contemplation of the omnibus clause in Continental's policy. Thereupon, Float-Away and National Surety filed this suit for a declaratory judgment that Barrett's claim against Float-Away came within the coverage of Continental's policy. Both parties moved for summary judgment. The district court sustained Continental's motion for summary judgment, ruling that Float-Away was not an additional insured under the policy which Continental had issued to Dance. Several months later, Barrett's personal injury action went to trial with Float-Away being defended by National Surety and Dance being defended by Continental. After a full day's trial the action was compromised on the basis of a consent judgment for $175,-000.00. Continental has paid into court $87,500.00 on behalf of Dance. This appeal involves only the remaining $87,-500.00 which National Surety claims that it does not owe on behalf of Float-Away.

Three principal questions are presented:

I. Is Float-Away an additional insured within the meaning of the omnibus clause in the policy that Continental issued to Dance?

II. If Float-Away is an additional insured under Dance's policy, do the employee-workmen's compensation exclusions in that policy exclude coverage?

III. If Float-Away is covered by Dance's policy, is that coverage primary when considered in conjunction with Float-Away's policy with National Surety?

 Preliminarily we discuss briefly the choice of law problem with regard to the interpretation of the insurance policy. The conflict of laws rules to be applied by the federal district court in a diversity case must conform to those prevailing in the courts of the state in which it sits. Klaxon Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L.Ed. 1477; Van Dusen v. Barrack, 1964, 376 U.S. 612, 628, 84 S.Ct. 805, 11 L.Ed.2d 945. Georgia appears to adopt the law of the place of making with respect to matters of contract inter-

1. One, an automobile liability policy issued by appellee Continental Casualty Company (Continental) to Dance Freight Lines (Dance), a common carrier; and, two, a comprehensive liability policy (both general and automobile liability) issued by appellant, National Surety Corporation (National Surety) to the co-appellant, Float-Away Door Company (Float-Away).

pretation, but views the place of making as where the contract is *delivered*, not where it is executed. Pink v. AAA Highway Express, Inc., 1941, 191 Ga. 502, 13 S.E.2d 337, 344, 137 A.L.R. 934, aff'd, 1941, 314 U.S. 201, 62 S.Ct. 241, 86 L. Ed. 152; see also, The Scotland, 1881, 105 U.S. 24, 29, 26 L.Ed. 1001; 16 Am. Jur.2d, Conflict of Laws § 11. It is unclear from the record and the briefs, however, where Continental's policy was delivered. The policy was apparently executed in Illinois, and Dance's principal place of business is in Kentucky. So far as appears, however, neither the law of Illinois nor Kentucky is dispositive of the issues presented here. There is no applicable foreign statute in either State, and the applicable case law is not shown to differ materially in the two States. This Court recently described the Georgia conflict of laws rule as follows:

> "Where there is no applicable foreign statute, the Georgia courts then go through a two-step process. First, in the absence of pleading and proof of 'foreign law,' the Georgia courts presume that 'the common law' is in effect in the foreign state. Second, in determining what this 'presumed' common law is, the Georgia courts rather than looking to the foreign case law, look to 'the common law' as illumined by Georgia decisions."

Budget Rent-A-Car Corporation of America v. Fein, 5 Cir. 1965, 342 F.2d 509, 513.[2]

Thus we find that little or no practical help toward the solution of the questions presented is afforded by the choice of law to be applied in the interpretation of the insurance policy, other than to be remitted to a consideration of the common law.

■ Preliminarily also, we consider the applicability of the familiar general rule that an insurance policy is to be construed liberally in favor of the insured. The rationale of that rule has been variously stated. See 29 Am.Jur., Insurance § 259, pp. 643, 644; 44 C.J.S. Insurance § 297, pp. 1174, 1175; 13 Appleman, Insurance Law & Practice § 7482, p. 202. Georgia has adopted this principle where the terms of the policy are not clear and unambiguous.[3]

If National Surety were not in this suit, certainly the above-discussed rule would apply. We are called upon to construe an insurance policy and, in so doing, we do not feel compelled to observe the coverage extended Float-Away by other insurers.[4]

2. Baker v. Metallizing Co. of America, 1961, 103 Ga.App. 174, 118 S.E.2d 843; Gorman v. Griffin, 1944, 70 Ga.App. 585, 28 S.E.2d 897; Minter v. Kent, 1940, 62 Ga.App. 265, 8 S.E.2d 109; Aetna Life Ins. Co. v. Evans, 1937, 56 Ga.App. 336, 192 S.E. 483; Thomas v. Shepherd, 1931, 42 Ga.App. 558, 156 S.E. 724; Reliance Realty Co. v. Mitchell, 1930, 41 Ga.App. 124, 152 S.E. 295; Swing v. Farrar, 124 Ga. 951, 53 S.E. 269; Wells v. Gress, 118 Ga. 566, 45 S.E. 418.

3. Dorsey v. State Mutual Life Assur. Co. of Worcester, N.D.Ga., 1964, 238 F.Supp. 391; American Family Life Ins. Co. v. Glenn, 109 Ga.App. 122, 135 S.E.2d 442; Burke v. Life Insurance Co. of Georgia, 104 Ga.App. 865, 123 S.E.2d 426; United Benefit Life Ins. Co. of Omaha v. Glisson, 105 Ga.App. 122, 123 S.E.2d 350; Dunn v. Travelers Indemnity Co., 217 Ga. 426, 122 S.E.2d 518; Macon Auto Auction v. Georgia Casualty & Surety Co., 104 Ga.App. 245, 121 S.E.2d 400; Davis v. United American Life Ins. Co., 215 Ga. 521, 111 S.E.2d 488; John Hancock Mut. Life Ins. Co. v. Frazer, 194 Ga. 201, 20 S.E.2d 915; Massachusetts Benefit Life Ass'n v. Robinson, 104 Ga. 256, 30 S.E. 918, 42 L.R.A. 261.

Ga.Code Ann. § 20–704(5) provides: "If the construction is doubtful, that which goes most strongly against the party executing the instrument, or undertaking the obligation, is generally to be preferred." See Boston Insurance Co. v. Gable, 5 Cir. 1965, 352 F.2d 368.

Ga.Code Ann. § 56–2419 provides: "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application made a part of the policy."

4. If we were to be persuaded by Float-Away's policy with other insurers, we would also have to consider any cancellations or refusals to accept liability by

Though neither party has cited authority to support its particular position as to the effect of National Surety being a movant in this case, we have noted several cases where courts have not abandoned the liberal construction rule even though an insurance company was the party seeking relief against another insurance company.[5]

■ We are also mindful of the desirability, as a matter of public policy, to protect the injured party and to construe the policy in such a manner so that those who are injured are not abandoned without compensation.[6] In construing an omnibus clause, the New Jersey Supreme Court stated, correctly we think, that it is "settled doctrine that such an insurance contract is to be liberally construed for the protection, not only of the named insured and those within its omnibus clause, but also the innocent plaintiff who was injured by the negligent operation of the insured automobile." Eggerding v. Bicknell, 20 N.J. 106, 118 A.2d 820.

There are cases which point to a more constrained interpretation of the insurance policy where the party seeking relief against the insurer is not an insured. Cook v. Kozell, 176 Ohio St. 332, 199 N.E. 2d 566, involved a suit by an insured party and its insurance company against the insurance company of an automobile dealer, whose customer, while driving a recently delivered car, hit the injured party. The plaintiffs sought a recovery on the grounds that the policy of the automobile dealer covered the negligent driver. The plaintiffs asked for a liberal construction against the insurer but the Ohio court refused, noting:

"First, the plaintiff was not a party to the contract of insurance and therefore, was not in a position to urge, as one of the parties, that the contract be construed strictly against the other party. Second, the construction urged by the plaintiff would have been a disadvantage to both parties to the contract. It would have made Continental [the insurer] liable for damages for which its named insured was not liable and for a hazard not covered by the policy, and the Euclid Ford Company [the automobile dealer] has no interest in covering the purchaser of an automobile for liability for property damage which such purchaser causes through his negligent operation of the automobile after the company has delivered it to him. This could only result in higher insurance premiums for the Euclid Ford Company. An insured gets the coverage he pays for, and, if the coverage is to be increased beyond that which he needs or for which the policy provides, the premiums will necessarily be increased. Therefore, the plaintiff who is not a party to the contract is not in a position to urge a construction of the contract which would be detrimental to both parties to the contract."

Though not bound by the Ohio court's reasoning, we do distinguish the *Cook* decision from the case now before us. Float-Away was an insured at least during the time it used Dance's trailer. It is not a stranger to the policy, but a possible third-party beneficiary within the meaning of the omnibus clause. American Fidelity & Casualty Co. v. St. Paul-Mercury Indemnity Co., 5 Cir. 1957, 248 F.2d 509; 13 Appleman, Insurance Law & Practice § 4354, pp. 243, 244. Second, the Ohio court first concluded that the driver of the automobile was not an insured and that the hazard was not covered by the policy; and, then, determined

such insurers. The relation between Float-Away and third-party insurance companies should not be a catalyst for our decision.

5. Iowa National Mut. Ins. Co. v. Fidelity & Cas. Co. of New York, 62 Ill.App.2d 297, 210 N.E.2d 622; Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co., 266 N.C. 430, 146 S.E.2d 410; Indemnity

Insurance Co. of North America v. Metropolitan Cas. Ins. Co. of New York, 33 N.J. 507, 166 A.2d 355.

6. A liberal construction of the omnibus clause may be indicated by the public policy evidenced by statutory requirements. See 7 Appleman, Insurance Law & Practice § 4353, and compare 49 U.S.C.A. § 315.

therefore that the injured party had no standing to seek a liberal construction. We are not confronted with an obvious case involving uninsurability as was the Ohio court.

■■■ Our attention is called to another case, Esfeld Trucking, Inc. v. Metropolitan Insurance Co., 193 Kan. 7, 392 P.2d 107, a subrogation action between two insurance companies to determine the coverage of the company which issued a policy to a truck owner. The Kansas court held at p. 110:

"We believe the policy is clear and unambiguous and there is no need for judicial interpretation or the application of rules of liberal construction [citing cases] particularly since this is an action between two insurance companies who draw their own policies and should know the meaning of the words used in those policies as they are understood in the general field of insurance."

Assuming that the language was clear and unambiguous, there was no need for a liberal or narrow construction for, if the plain meaning of the words portray but one construction, the court must adopt that construction. If there is ambiguity, we do not agree that the presence of an insurance company as a subrogee should prohibit a liberal construction in favor of the insured. Not only does the subrogee stand in the shoes of his principal, but also there is no validity to the argument that, because the subrogee happens to be an insurance company, it would necessarily know the meaning of the language in a policy of another insurance company. Furthermore, under Georgia law we are bound to construe an ambiguous contract against the one who made it. Ga. Code Ann § 20–704(5).[7]

■■■ We conclude, therefore, that appearance of National Surety as a co-plaintiff does not in this case distract from our construing Dance's policy most fav-
orably for Float-Away, if Float-Away is, in fact, an insured.

## I.

The critical clauses in the policy issued to Dance by Continental provide in pertinent part as follows:

"INSURING AGREEMENTS

"I Coverage A—Bodily Injury Liability

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages * * * sustained by any person, caused by accident and arising out of the ownership, maintenance or use of any automobile.

 * * * * * *

"III Definition of Insured

"The unqualified word 'insured' includes the named insured and also includes any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission * * *.

 * * * * * *

"CONDITIONS

 * * * * * *

"4. Purposes of Use Defined * * (c) Use of automobile includes the loading and unloading thereof."

■■■ Continental virtually admits, as it must, that Float-Away was an additional insured within contemplation of the omnibus clause of Dance's policy *at the time* Float-Away was loading the doors on Dance's trailer, i. e., *at the time* the alleged negligence occurred. Continental urges, however, that the phrase "while using" in the clause defining "insured" limits Float-Away's status as an insured to the period while Float-Away was using (loading) Dance's trailer, and since no accident or injury occurred dur-

---

7. In Prickett v. Hawkeye-Security Insurance Co., 10 Cir. 1960, 282 F.2d 294, 298, 83 A.L.R.2d 1224, the court distinguished between the interpretation to be made when the rights of the public are involved, and the interpretation to be made when fixing rights between parties other than insured members of the public.

ing that period there is no liability. Thus, Continental's theory is that once the loading operation was completed, Float-Away ceased to be an additional insured under Dance's policy, and, since the accident did not occur until after the negligent loading was completed, Float-Away was not entitled to protection under the policy. Float-Away, on the other hand, stresses the language of the coverage clause and argues that the accident "arose out of" the use (loading) of the trailer by Float-Away.[8]

■ Continental relies on cases which hold that an accident which, as to its nature, represents a risk covered by a policy of liability insurance is not covered if it occurs after the period of coverage under the policy, citing the cases collected in an annotation found in 57 A.L.R.2d 1385–1394. However, as pointed out in 7 Appleman, Insurance Law & Practice § 4268, the commencement and duration of the risk and the expiration of policy protection are governed by the particular provisions of the policy contract. Compare Provident Life & Accident Ins. Co. v. Nitsch, 5 Cir. 1941, 123 F.2d 600, 603. Such terms are nearly always very definite. For example, in this case Continental's original policy provided: "Item 2. Policy Period: From June 1, 1958 to June 1, 1961. * * * This policy applies only to accidents which occur during the policy period * * *." Endorsement No. 4, effective 6/1/61, provided in part: "It is hereby agreed that Item 2 of the Declarations is amended to read as follows: Policy Period: From June 1, 1961 to Until Cancelled."

■ To re-state Continental's contention, we quote from its brief:

"It is beyond dispute that Mr. Barrett's injuries did not occur 'at the same time' or 'at or during which time' Float-Away was loading the Dance trailer—that is to say the injury did *not* occur (in the language of Continental's policy) 'while [Float-Away was] using' the trailer. Float-Away was an insured of Continental, if at all, only 'while' loading the trailer. The accident did not occur 'during the time that,' 'at the same time' or 'at or during which time' Float-Away was an insured of Continental."

The "accident" and Barrett's injuries occurred during the "Policy Period" defined in the contract. The words "while using" as employed in the omnibus clause are not sufficiently definite to provide a different "Policy Period" for the additional insured. The case involving a fact situation most closely akin to that in the instant case is Gulf Insurance Co. v. Mack Warehouse Corp., E.D.Pa.19??, 212 F.Supp. 39.[9] The pertinent clause in the policy in issue in that case contained language almost identical to that contained in Continental's policy. There the district court ruled that the language was broad enough to cover a party who negligently loaded a truck even though the accident giving rise to the injury did not occur until the truck was being unloaded by another party. The court reasoned that:

"The policy does not restrict coverage to accidents occurring while the loading operation is being conducted. On the contrary, it expressly covers claims for damages 'arising out of the * *

8. Our decision must further be guided by the proposition that an "automobile policy is to be construed as a whole rather than considering only certain clauses or fragmentary parts, and effect should be given, if possible, to all provisions thereof." 13 Appleman, Insurance Law & Practice § 7482, at p. 203. See also 7 Appleman § 4354.

9. See also, Federal Insurance Co. v. Michigan Mutual Liability Co., E.D.Pa.1959,

172 F.Supp. 858, aff'd 3 Cir. 1960, 277 F.2d 442; United States Fidelity & Guaranty Co. v. Church, N.D.Calif.1952, 107 F.Supp. 683, 687; Panhandle Gravel Co. v. Wilson, Tex.Civ.App.1952, 248 S.W.2d 779; Muller v. Sun Indemnity Co. of New York, 276 App.Div. 1028, 96 N.Y.S.2d 140, aff'd, 302 N.Y. 634, 97 N.E.2d 760; Bobier v. National Casualty Co., 143 Ohio St. 215, 54 N.E.2d 798; 7 Appleman, Insurance Law & Practice (1962) § 4322.

use [including loading] of the automobile.' "

212 F.Supp. at 41. The significant distinguishing factor in that case was that the party seeking coverage was a *named* insured rather than an additional insured. Nevertheless, the court's language appears broad enough to include a similar claim by an additional insured:

"To hold otherwise would be to make the 'loading and unloading' clause almost indistinguishable from the 'ownership, maintenance or use' clause, for it would require that the loading or unloading clause should not be effective except where the automobile is actually in use for the purpose. Such a result would run contrary to the purpose of the loading and unloading clause, which is an extension of the ownership, maintenance and use clause, and not a limitation upon it." 212 F. Supp. at 41.

Float-Away was covered as an additional insured under Dance's policy "while using" (loading) the trailer. That being true, it follows that the extent of that coverage should be measured by the clause obligating Continental to pay damages "sustained by any person, caused by accident and *arising out of* the ownership, maintenance or use of any automobile." (Emphasis added.) Clearly, the accident "arose out of" the negligent loading of the trailer by Float-Away, at which time it *was* an additional insured under the policy.

## II.

■ Continental further urges that, even if Float-Away is an additional insured under Dance's policy, the following clauses exclude coverage:

"This policy does not apply:

\* \* \* \* \* \*

"(b) \* \* \* to bodily injury to or sickness, disease or death of any employee of the insured arising out of and in the course of (1) domestic employment by the insured, if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law \* \* \* ;

"(c) \* \* \* to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law \* \* \*."

It is undisputed that Barrett applied for and received workmen's compensation benefits from the State of Ohio by virtue of his employment with Universal. Continental argues that the term "the insured" as used in the above two clauses should be interpreted as referring to *any* insured under the policy, thus excluding coverage with regard to all insureds under the policy when the injured person is an employee of *any* insured. National Surety and Float-Away, on the other hand, contend that "the insured" refers only to the party seeking coverage under the policy, thus excluding coverage only when the injured claimant is the employee of the party seeking coverage, or when the party seeking coverage has workmen's compensation liability to the injured employee. There exists a pronounced conflict concerning the interpretation of such clauses.[10]

The better reasoned cases adopt a restrictive interpretation of "the insured" as referring only to the party seeking coverage under the policy. See discussion in Maryland Casualty Co. v. American Fidelity & Cas. Co., E.D.Tenn. 1963, 217 F.Supp. 688.[11] The primary objective of such exclusionary clauses is to avoid duplication of coverage with respect to compensation insurance. With that purpose in mind, there seems to be no reason why an insured should not be indemnified against the claim of an em-

10. See cases cited in Kelly v. State Auto. Ins. Ass'n, 6 Cir. 1961, 288 F.2d 734, 735, n. 1, 736, n. 2, and in Maryland Casualty Co. v. American Fidelity & Cas. Co., E.D. Tenn.1963, 217 F.Supp. 688, 690, n. 1.

11. Continental cites cases involving the issue whether coverage should be afforded to a party claiming to be an additional insured as to a claim by an employee of the *named* insured. Michigan Mutual

ployee outside of that insured's employment.

If the reasoning of Continental would prevail, thereby excluding coverage to one insured as to a claim by an employee of another insured, then Dance, the named insured, as well as Float-Away, would be excluded from coverage in the instant case, although the injured claimant is an employee of neither Dance nor Float-Away, and neither is liable under any compensation law.[12]

### III.

 The policy issued by Continental to Dance and the one issued by National Surety to Float-Away each contain the same provisions with regard to additional insurance:

"If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance."

Float-Away and National Surety contend that since the trailer was not owned by Float-Away, but rather by Dance, National Surety is liable only for any excess over Continental's coverage. Continental does not refute this position. We agree with National Surety that the nonownership clause, with its excess coverage pro-

vision in Float-Away's policy, does not constitute other "valid and collectible insurance" within the meaning of Dance's policy. The liability of National Surety, as an excess insurer, arises after the coverage of Dance's policy has been exceeded.[13] Applying this reasoning, Continental as insurer of Dance, the owner of the involved trailer, is primarily liable to the extent of its policy limits.

Based upon the terms of Dance's policy, Continental is liable for Barrett's judgment against Float-Away.

Reversed and remanded.

### ON PETITION FOR REHEARING

### PER CURIAM:

After consideration, appellee's petition for rehearing is denied. However, several points urged in the petition merit comment.

 Float-Away is a plaintiff in this suit and is, therefore, entitled to the liberal construction doctrine. American Fidelity & Casualty Co. v. St. Paul-Mercury Indemnity Co., 5 Cir. 1957, 248 F.2d 509, is clearly distinguishable, for in that case St. Paul sued not only another insurance company but also Larsen, its own insured. We need not consider inappropriate alignment of parties or obviously noninterested parties. Neither situation confronts us in this case.

 The appellee erroneously assumes that Float-Away is not a real party in interest. See Rule 17(a), Fed.R. Civ.P. The judgment in favor of Barrett was against Float-Away, not National Surety. Float-Away, as an omnibus insured, is an interested party to this action seeking to enforce the policy

---

12. Liability Co. v. Continental Casualty Co., 7 Cir. 1961, 297 F.2d 208; Kelly v. State Automobile Ins. Ass'n, 6 Cir. 1961, 288 F.2d 734. In this case, the injured party was an employee of Universal and not the named insured, Dance. Compare Michigan Mutual Liability Co. v. Continental Casualty Co., supra, 297 F.2d at p. 210. See also, Fireman's Fund Indemnity Co. v. Mosaic Tile Co., 101 Ga.App. 701, 115 S.E.2d 263.

12. See American Fidelity & Casualty Co. v. St. Paul-Mercury Indemnity Co., 5 Cir. 1957, 248 F.2d 509, 517.

13. See Citizens Mutual Automobile Insurance Co. v. Liberty Mutual Ins. Co., 6 Cir. 1959, 273 F.2d 189; 8 Appleman, Insurance Law & Practice § 4914, n. 43.

coverage of judgment debts incurred by insureds.

 To re-emphasize, the mere fortuitous existence of National Surety as Float-Away's comprehensive liability insurer should not distort a proper construing of Dance's policy as applied to Float-Away. Though the list of intramural insurance Donnybrooks is constantly growing,[1] we cannot shrink from our duty to construe the particular policy confronting us. National Surety is a party to this suit, but this alone should not detract from Float-Away's claim.

 As to Fireman's Fund Indemnity Co. v. Mosaic Tile Co., 101 Ga.App. 701, 115 S.E.2d 263, the Georgia Court of Appeals was confronted with a case that involved an injured employee of the named insured. The opinion does not indicate that if the injured employee was employed by a third party, who is an omnibus insured different from the one involved in the action before the court, that a similar holding would result. While Georgia did not restrict the definition of "insured" to the party seeking coverage, it also did not adopt the all-inclusive approach suggested by the appellee. A definition unambiguous in the light of some circumstances, may become hazy and unclear when additional factors cast their shadows.[2] We are not convinced that the definition which would apparently exclude coverage when the employee of a named insured is injured also denies coverage if an employee of Universal, a different omnibus insured, is involved.

Finally in noting the rationale of Gulf Insurance Co. v. Mack Warehouse Corp., E.D.Pa.1962, 212 F.Supp. 39, we were

not adopting its holding for, as we pointed out, the case can be distinguished. The discussion concerning the exclusionary clause is cited, however, with approval.

The petition for rehearing is denied.

---

1. Hamilton v. Maryland Casualty Co., 5 Cir. 1966, 368 F.2d 768. The appearance of insurance companies on both sides of the case is no longer a unique or unusual phenomenon. Facing this reality and being well aware of the ultimate beneficiaries of our decision, we are constrained, however, to construe these contractual agreements without unnecessary diversions and conjectures concerning tactics of parties and the motivating factors initiating the law suit. If we were to do otherwise, an insurance company would be handicapped in pressing or supporting its named insured's claim that he is an omnibus insured under another insurer's policy.

2. The existence of the employee exclusion clause does not alter our decision that *Mosaic Tile Company* is not controlling. The same definition of "insured" is involved.