No. 41,603

CLIFTON M. CONN, SR., and DORIS LOU CONN, Parents and Next of Kin of CLIFTON M. CONN, JR., an Infant, *Appellants*, v. JOHN T. WALLING, *Defendant*; THE ALLIANCE MUTUAL CASUALTY COMPANY, Garnishee, *Appellee*.

(349 P. 2d 925)

Opinion filed March 5, 1960.

*James W. Sargent*, of Wichita, argued the cause, and *W. D. Jochems, J. Wirth Sargent, Emmet A. Blaes, Roetzel Jochems, Robert G. Braden, J. Francis*

*Hesse* and *Stanley E. Wisdom*, all of Wichita, were with him on the briefs for the appellants.

*Robert C. Foulston*, of Wichita, argued the cause, and *George B. Powers, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Malcom Miller, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris, Anthony T. Dealy, Gerald Sawatzky, Donald L. Cordes* and *Robert L. Howard*, all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This was a proceeding in garnishment. Plaintiffs (appellants) recovered judgment against John T. Walling, defendant, for damages sustained in an automobile accident, and caused a summons in garnishment to be issued against the Alliance Mutual Casualty Company, garnishee (appellee), who answered denying it owed Walling anything. Plaintiffs elected to take issue on the answer; the trial court heard the parties, with the exception of Walling, who made no appearance, on the question of whether the garnishee was indebted to Walling, and entered judgment in favor of the garnishee, from which plaintiffs appeal.

For all purposes, the facts in this case are not in dispute. The question is—did the trial court properly construe the policy as amended and apply the law to the undisputed facts? These are as follows: On June 3, 1954, the garnishee insurance company issued John T. Walling its national standard automobile policy covering his 1954 Dodge. This policy expired December 3—six months later. Coverage I A thereof provided that the insurance company would pay, on behalf of insured, all sums which the insured should become legally obligated to pay as damages because of bodily injury sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile. Coverage IV (a) (4) stated:

"*Newly Acquired Automobile*—an automobile, ownership of which is acquired by the named insured who is the owner of the described automobile, if the named insured notifies the company within thirty days following the date of its delivery to him, and if . . . it replaces an automobile described in this policy . . .; but the insurance with respect to the newly ·acquired automobile does not apply to any loss against which the named insured has other valid and collectible insurance. The named insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile."

The record failed to disclose that Walling had any other valid and collectible public liability insurance, and it showed that the

premium for public liability and property damage would be the same, regardless of the make or model of the automobile.

Coverage V provided:

"*Use of Other Automobiles:* If the named insured is an individual who owns the automobile classified as 'pleasure and business' . . ., such insurance as is afforded by this policy for bodily injury liability, for property damage liability and for medical payments with respect to said automobile applies with respect to any other automobile, . . ."

At the time of the collision on May 30, 1955, which resulted in the death of plaintiffs' son and judgment therefor against Walling, he was driving an automobile belonging to another person.

On September 17, 1954, Walling sold the Dodge described in the policy and on November 20 purchased a 1954 Buick, but did not notify the garnishee insurance company of the change. On December 3, the agent of the garnishee company extended the policy for a period of six months; *i. e.,* to June 3, 1955. He did not ask Walling if he still owned the Dodge, nor did Walling notify him of the sale thereof and the purchase of the Buick. The automobile renewal certificate was not signed by Walling and did not describe the insured car. It did, however, contain the following provision:

"It is Agreed that if, subsequent to the issuance of the policy which is being renewed by this certificate, the Company's automobile policies affording similar insurance are revised so as to extend or broaden such insurance without additional charge; such extended or broadened insurance shall inure to the benefit of the insured hereunder *from the date such extended or broadened coverage is made effective by the Company.*" [Emphasis supplied.]

April 29, 1955, the garnishee insurance company notified the commissioner of insurance, by letter, that it was broadening its coverage retroactively to include policies in effect on and after April 1, 1955. This letter in pertinent part reads:

"*RE:* INTERPRETATION NEW AUTOMOBILE POLICY—APRIL 1, 1955

"The rule changes which are the result of the Fifth Revision of the Standard Provisions of the Basic Automobile Liability Policy are applicable to all new and renewal policies written on or after April 1, 1955 by the Alliance Mutual Casualty Company.

"Policies in effect on or after April 1, 1955, shall be·interpreted to afford broader coverages granted by the April 1, 1955, revision of the Standard Provisions for Automobile Liability Policies as to the same coverages, with respect to accidents occurring on or after the effective date of the policy but in no event prior to April 1, 1955. We have ordered such new policies and will file a copy with your department as soon as received.

"In the meantime, we will appreciate your approval of the above rule as a part of our filing so that we may interpret present automobile policies in effect to afford these broader coverages to policyholders."

On May 13, garnishee supplemented the aforementioned letter and filed with the commissioner its new policy affording the broadened coverage, under which the insured was not required to notify the company of replacement of an automobile. On May 25, the commissioner of insurance notified the garnishee insurance company that its new policy was acceptable insofar as the text thereof was concerned, but certain minor corrections of printed matter appearing on the back of the policy, not material herein, were specified. On May 31, the commissioner of insurance approved these corrections.

We are of the opinion that this action is controlled by the insurance contract entered into between Walling and garnishee; therefore, the findings and conclusions of the trial court need not be narrated. In view of the subsequent broadened provisions of the policy, the determinative question in this case is whether the insured's failure at the time of the accident to own the automobile described in the original policy and his failure at the time of the extension of the policy to notify garnishee of the disposal of the Dodge and the purchase of the Buick made inapplicable the coverage referred to in the latter policy. It must be conceded that under the broadened provisions of the policy, ownership of the automobile described therein was immaterial to the application of the "Use of Other Automobiles" provision.

At the outset it may be stated it is a well-established rule in this state that where the terms of an insurance policy are open to different constructions, the one most favorable to the insured must prevail (*Samson v. United States Fidelity and Guaranty Co.*, 131 Kan. 59, 289 Pac. 427); or, stated in another way, where a provision of an insurance policy is susceptible of different constructions, it is to be construed most favorably to the insured, and if an insurer intends to restrict its coverage it should use language clearly stating its purpose (*Miller v. Farmers Mutual Automobile Ins. Co.*, 179 Kan. 50, 292 P. 2d 711; *Chicago, R. I. & Pac. Rld. Co. v. Aetna Ins. Co.*, 180 Kan. 730, 308 P. 2d 119). It is also an inviolate rule that if provisions in an insurance policy result in ambiguity, inconsistency or uncertainty, forfeiture must be denied, as under those circumstances the provisions of the policy must be construed in favor

of the insured. (*Sebal v. Columbian Nat. Life Ins. Co.*, 144 Kan. 266, 58 P. 2d 1108.)

The policy in the instant case described the Dodge automobile. Section IV (a) (4) under certain conditions extended the liability insurance protection to cover a replacement automobile. Section V provided liability insurance protection to cover the "use of other automobiles." It was the purpose of the policy, insofar as liability for personal injury, property damage and medical payments was concerned, to cover the named insured, John T. Walling. This case is one of first impression in the state, and we find no precedent for a conclusion that the public liability coverage afforded by the policy was terminated by the insured's sale of the Dodge automobile, nor can we find anything in the language of the policy which terminated such coverage in that event. The policy contained no provision for forfeiture under those circumstances, and this court will not read such a clause into the policy.

The provisions of Section V of the policy were obviously designed to cover public liability when the insured used other automobiles. There was nothing which required—either expressly or by implication—that the ownership of the particular automobile described in any other portion of the policy be retained by the insured. (*Freeport Motor Casualty Co. v. Tharp*, 338 Ill. App. 593, 88 N. E. 2d 499; Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 6, § 3962; *Pauli v. St. Paul Mercury Indemnity Co.*, 167 Misc. 417, 4 N. Y. S. 2d 41.) Assuming, without deciding, that Walling was guilty of fraudulent conduct in not volunteering at the time the policy was extended or renewed on December 3, 1954 the information that he had sold the Dodge and had purchased the Buick, this fact would make the contract, at most, voidable, not void. (12 Am. Jur., Contracts, § 10, p. 507; Vance on Insurance [3d Ed.], § 67, p. 386.)

Be that as it may, when the garnishee broadened its policy coverage effective April 1, 1955, and filed a new policy with the commissioner of insurance, Walling's policy was in full force and effect and the broadened provisions applied thereto. Such provisions made inapplicable the thirty-day notice in paragraph IV (a) (4) of the original policy, and, as a result, notice to the garnishee by Walling of the sale of the Dodge and the purchase of the Buick was waived; and at the time of the accident which later resulted in a judgment against Walling, the new policy containing the

broadened provisions was in full force and effect. Garnishee's contention that Walling failed to cooperate with it immediately after the accident and that by reason thereof the policy was subject to cancellation is not sustained by the record and is, therefore, without merit. No further comment is necessary.

In view of what has been said, garnishee's attempted cancellation of the policy and the return of the premium to Walling after the accident were ineffectual. The judgment of the trial court is reversed and the case is remanded with directions to enter judgment for the plaintiffs in an amount within the provisions of the policy issued by the garnishee.

It is so ordered.