282 F.2d 294
 83 A.L.R.2d 1224
 Donald W. PRICKETT, Appellant,
v.
HAWKEYE-SECURITY INSURANCE COMPANY, a corporation, Appellee.
FARMERS MUTUAL HAIL INSURANCE COMPANY OF IOWA, a
corporation, Appellant,
v.
HAWKEYE-SECURITY INSURANCE COMPANY, a corporation, Appellees.
 Nos. 6172, 6261.
 United States Court of Appeals Tenth Circuit.
 Aug. 8, 1960.
 
 Willard N. Van Slyck, Jr., Topeka, Kan. (of Doran, Iline, Cosgrove & Russell) Topeka, Kan., for appellants.
 Lawrence Weigand, Wichita, Kan. (Lawrence E. Curfman, Bryon Brainerd, Charles W. Harris, Orval J. Kaufman, J. Ruse McCarthy, Donald A. Bell, Charles C. McCarter, J. L. Weigand, Jr., and Spencer L. Depew, Wichita, Kan., on the brief), for appellee.
 Before MURRAH, Chief Judge, and BRATTON and LEWIS, Circuit Judges.
 BRATTON, Circuit Judge.
 
 
 1
 These appeals bring here for review integrated parts of litigation arising out of a traffic accident occurring on a highway in Kansas, and the primary issue on which the appeals turn is which of two insurance carriers shall ultimately bear the loss arising out of the accident. For convenience, reference will be made to William L. Prickett as Prickett; to Donald William Prickett as Donald; to Farmers Mutual Hail Insurance Company of Iowa as Farmers Mutual; to Ed Holestine, doing business as Ed Holestine Truck Line, as Holestine; and to Hawkeye-Security Insurance Company as Hawkeye.
 
 
 2
 Prickett and Donald are father and son, and they reside at Plainville, Kansas. Prickett was engaged in the trucking business, and he held an interstate commerce carrier permit authorizing the hauling of ordinary livestock and unmanufactured agricultural commodities. Farmers Mutual issued to him a standard automobile insurance policy, and the policy was on file with the State Corporation Commission of Kansas. At the times material here, Donald was nineteen years of age; worked for his father in the trucking business; and received from the faimily chest cash from time to time with which to meet his ordinary needs. He had a regular chauffeur's license for which he was eligible under the laws of Kansas; but on account of his minority in age, he was ineligible for and did not have a special chauffeur's license required by the laws of Kansas of a person driving a motor vehicle while in use as a public or common carrier of persons or property. Holestine conducted a common carrier motor freight business; maintained a place of business in Kansas City, Kansas; and held an interstate commerce carrier permit authorizing the hauling of livestock, building materials, and other specified commodities. Hawkeye issued to him its policy of public liability and property damage insurance; and the policy was on file with the State Corporation Commission of Kansas. Most of Holestine's outbound cargoes from Kansas City were transported with the use of equipment belonging to other truckers pursuant to an arrangement known in the trade as a trip lease under an emergency clearance certificate which the Corporation Commission of Kansas had authorized the firm to issue. Such operations were conducted under Holestine's interstate commerce carrier permit. Normally, the truck owner furnished the driver and paid the operating expenses; Holestine paid the transportation taxes, provided bodily injury liability, property damage liability, and cargo liability, insurance coverage; and the customary division of the tariff was seventy per cent to the owner of the equipment and thirty per cent to Holestine. The emergency clearance certificate executed on behalf of Holestine and placed in the hands of the driver of the leased truck recited among other things that full responsibility for the operation of the equipment during the period covered by the clearance would be with Holestine regardless of its actual ownership. During three or four years preceding the times mentioned here, Prickett and Donald hauled many cargoes for Holestine under such trip lease arrangement. The ordinary procedure after delivering a cargo in Kansas City was to obtain through Holestine a backhaul cargo consigned to some point or points in Kansas. In that way, remuneration for round trips to Kansas City was increased.
 
 
 3
 On the occasion having materiality here, Donald transported a load of cattle to Kansas City, Missouri. The next morning after delivering the cattle, in accordance with the customary practice, Donald inquired whether Holestine had any shipment of freight to be made to a point in western Kansas which he might transport. He was informed that there would be one the following day; and he was told where to go in Kansas City, Missouri, in order that the freight to be shipped could be loaded into the truck. On the following morning, Donald went to the place at which the freight was to be obtained; it was loaded onto the truck-trailer; and he then went to the office of Holestine. There, he was handed certain documents, including copies of the bill of lading, an emergency clearance certificate, and certain other papers. After leaving the office of Holestine, Donald cleared a port of entry west of Kansas City, Kansas, and started on the highway specified in the certificate of clearance. At about 10:50 o'clock that night, the truck-trailer came to a stop in the right lane of the highway; an automobile following collided with the rear of the trailer; six persons riding in the automobile were injured; and one of them died.
 
 
 4
 Three suits for damages arising out of the accident were filed in the United States Court for Kansas. Prickett, Onald, Farmers Mutual, Holestine, Hawkeye, and the driver of the automobile which was approaching the scene of the accident, were joined as defendants. The cases were consolidated for trial. Before submission of the cases to the jury, the court directed dismissal of the actions as against Farmers Mutual. Verdicts were returned in favor of the driver of the automobile approaching the scene of the accident. And verdicts were returned in favor of all plaintiffs against all remaining defendants. Judgments were entered upon the verdicts. But the judgment in one of the cases was reduced as against Hawkeye in an amount to bring it within the maxmum limits of liability specified in the Hawkeye policy. Hawkeye paid in full the judgments against it, together with accrued interest and court costs. After Hawkeye paid off the judgments against it, it instituted an action against Donald to recover judgment in the nature of indemnity or restitution for the amounts which it had paid. Judgment was entered for Hawkeye, and Donald appealed. After Hawkeye recovered the judgment against Donald, it caused a writ of garnishment to issue against Farmers Mutual. Judgment was entered in the garnishment proceeding in favor of Hawkeye, and Farmers Mutual appealed. The two appeals-- that of Donald in one instance and that of Farmers Mutual in the other-- were submitted together in this court.
 
 
 5
 The first ground of attack upon the judgment rendered against Donald is that the court erred in finding and concluding that the Hawkeye policy excluded coverage to Donald and that he was not an additional insured thereunder. In an order entered in advance of trial, the court determined among other things that the policy excluded coverage to Donald; that he was not an additional insured under it; and that the scope of the trial should be limited accordingly. That order gives rise to the attack upon the judgment. The Hawkeye policy included in its definition of the insured not only the named insured but any person while using the motor vehicle with the permission of the named insured. One endorsement on the policy provided in effect that the insurance should apply to all trucks, tractors, trailers, and semitrailers used for the purposes stated as applicable thereto in the declaration, and in addition, trucks, tractors, trailers, and semi-trailers hired or leased by the named insured while such equipment was operated by or for him. Another endorsement provided that Hawkeye agreed that the policy was thereby amended and extended so as to cover any and all motor vehicles, trailers, and semi-trailers operated or used by the assured pursuant to the certificate, permit, or license issued by the State Corporation Commission of Kansas. And a third endorsement provided in substance that Hawkeye agreed to pay within the limits of liability fixed in the policy any final judgment recovered against Holestine for bodily injury to or death of any person, or damage to property of others, resulting from negligence operation, maintenance or use of motor vehicles under certificate of public covenience and necessity, or permit, issued by the Interstate Commerce Commission, regardless of whether such motor vehicles were specifically described in the policy or not. And section 8-270, General Statutes of Kansas 1949, provides in effect that the operation of a vehicle within the state without complying with the provisions of the act shall not be considered as operating such vehicle unlawfully or in violation of law so as to affect the validity of any contract or policy of insurance. But the definitive provision in the policy, the endorsements upon the policy, and the statutory provision, were intended to protect the public. Their purpose was to assure compensation to third persons, that is members of the public, for injury or death of for damage to property, arising out of negligent operations of motor carriers. Travelers Mutual Casualty Co. v. Herman, 8 Cir., 116 F.2d 151, certiorari denied, 313 U.S. 564, 61 S.Ct. 842, 85 L.Ed. 1523; Bennett v. Preferred Accident Insurance Co. of New York, 10 Cir., 192 F.2d 748. They were not intended to fix rights as between the insurance carrier and the operator of an insured motor vehicle whose negligence gave rise to death or personal injury of members of the public.
 
 
 6
 Inpresently pertinent part, the Hawkeye policy expressly provided in effect that it should not apply while the insured motor vehicles were being operated by any person in violation of any state or federal law as to the age of such person. Not having a special chauffeur's license, Donald was operating the truck at the time of the accident in violation of section 8-238, General Statutes of Kansas, 1949; and being under twenty-one years of age, he was operating the vehicle in violation of regulation 191.6 promulgated with force of law by the Interstate Commerce Commission. 49 C.F.R. Transportation 191.6. Keeping in mind the paramount purpose of the statutory provision and the regulation, it may well be that the exclusory provision in the policy would not be effective in an action brought by a third person seeking damages for death or personal injury proximately resulting from the negligent operation of a common carrier motor vehicle by one under twenty-one years of age and having no special chauffeur's license. But this case does not involve the rights of a third person seeking damages for death, personal injury, or damage to property arising out of the negligent operation of the insured motor vehicle by a minor not having a special chauffeur's license. This is an action in which Hawkeye seeks to recover from Donald as the active tort feasor in the accident reimbursement for outlays made in the discharge of the judgments for damages. And as between these parties, the provision contained in the policy excluding coverage while the insured motor vehicle was being operated in violation of law was not inconsistent with the state statute or the regulation of the Interstate Commerce Commission. It was within the range of contractual powers of the parties to the insurance contract and is effective as between the parties in this action.
 
 
 7
 In an effort to circumvent liability for indemnity to Hawkeye, Donald contends in substance that he was in the position of a special employee, or in any event, an agent of Holestine; that since he bore that relationship to Holestine, Hawkeye was obligated by the contractual provisions in its policy and by the law of Kansas to pay within the limits of the policy the judgments for damages in the original actions; and that, therefore, Hawkeye is not entitled in this action to judgment against him for reimbursement for its outlays. It is the law in Kansas that a servant may be loaned or hired by his master to another for some special purpose and become the servant of such other person in the performance of the particular service contemplated by the loan or hire. Moseman v. L. M. Penwell Undertaking Co., 151 Kan. 610, 100 P.2d 669; Hotel Kansan Operating Co. v. Olson, 171 Kan. 295, 232 P.2d 417. But the mere fact that an employee is sent to do certain work pointed out to him by the person who has made an arrangement with his general employer, standing alone, does not make him that person's servant. And where the owner of machinery or equipment hires or rents it together with an operator in his employ to operate it while performing the particular service contemplated by the hiring or renting, the presumption is that the employee remains the servant of the owner. Kelley v. Summers, 10 Cir., 210 F.2d 665. The substance of the arrangement under which the truck and semi-trailer equipment was being operated at the time of the accident was that the equipment would be leased to Holestine together with a driver. Donald was told where to obtain the cargo and where to deliver it. But there was no agreement that his authority or control over the vehicle should be completely relinquished while it was being used in the particular service. Donald was in sole charge and control of the vehicle. It was his duty to maintain it in operating condition, and to determine the manner in which it should be operated. We think it is clear that in these circumstances, Donald was not a special employee or agent of Holestine. Instead, he was the employee of Prickett. Moseman v. L. M. Penwell Undertaking Co., supra; Kelley v. Summers, supra.
 
 
 8
 Another ground of attack upon the judgment rendered against Donald is that the court erred in finding and concluding that Hawkeye owed to Donald no duty to settle the actions for damages. Pursuant to the obligation created by its policy, Hawkeye acted on behalf of Holestine in the defense of those actions. Preceding and during the trial of such cases, plaintiffs submitted to Hawkeye certain offers of settlement, all within the maximum limits of liability fixed in the Hawkeye policy. Some were expressly rejected and no final response were made to others. It is settled law that where an insurance carrier acts in behalf of the insured in the conduct of litigation, it must exercise good faith toward the insured in determining whether an offer of settlement within the limits of its policy shall be accepted or rejected; that in determining whether such an offer shall be accepted or rejected, it may properly give appropriate consideration to its own interest; that it must give equal consideration to the interests of the insured; and that its failure to do so constitutes bad faith which renders it liable to the insured for any resulting damage if the judgment against the insured exceeds the amount of the insurance. American Fidelity & Casualty Co., Inc. v. All American Bus Lines, 10 Cir., 179 F.2d 7; State Farm Mutual Automobile Insurance Co. v. Skaggs, 10 Cir., 251 F.2d 356. Hawkeye owed that duty to Holestine. But since Donald was operating the truck and semi-trailer unit in violation of law and, therefore, the policy provided no coverage as between Hawkeye and him, failure to settle the actions did not constitute any breach of duty to Donald.
 
 
 9
 The substance of a further challenge to the judgment against Donald is that the court erred in finding and concluding that Holestine was not guilty of any negligence which caused or contributed to the cause of the accident; the Holestine would be entitled to recover from Donald any amount which he became legally liable to pay as the result of the accident; and that Hawkeye was subrogated to Holestine's right against Donald to be indemnified for any loss suffered as the result of Donald's negligence. Indemnity implies a primary liability in one person, although a second person is also liable to a third party. And where one party has been required to discharge a claim for which he is only secondarily or constructively liable, he may exact indemnity from the person primarily liable for the injury giving rise to the claim. Lee Way Motor Freight, Inc. v. Yellow Transit Freight Lines, 10 Cir., 251 F.2d 97; Allied Mutual Casualty Corp. v. General Motors Corp., 10 Cir., 279 F.2d 455. The negligence of Donald was the proximate cause of the accident on the highway. No negligence on the part of Holestine caused or contributed to the cause of the accident. But under the law of Kansas, Holestine was constructively obligated to satisfy the claims for damages arising out of the accident. If Holestine had satisfied the claims for damages arising out of the accident, he would have been entitled to indemnity from Donald. City of Fort Scott v. Pen Lubric Oil Co., 122 Kan. 369, 252 P. 268; Allied Mutual Casualty Corp. v. General Motors Corp., supra; Rozmajzl v. Northland Greyhound Lines, 242 Iowa 1135, 49 N.W.2d 501; Lunderberg v. Bierman, 241 Minn. 349, 63 N.W.2d 355, 43 A.L.R.2d 865. And when Hawkeye made its disbursements in discharge of the judgments for damages arising out of the accident proximately caused by the negligence of Donald, it became subrogated to the right of Holestine to recover indemnity or reimbursement from Donald. Allied Mutual Casualty Corp. v. General Motors Corp., supra.
 
 
 10
 One further attack upon the judgment rendered against Donald merits brief consideration. Hawkeye paid the judgments against it about three months after return of the verdicts in the actions for damages. It paid the interest which accrued during the interim. And the judgment in favor of Hawkeye included the interest which Hawkeye had paid. The contention is that Hawkeye was not entitled to recover from Donald judgment for the interest which Hawkeye had paid. The contention does not call for extended consideration. It is the rule of law in Kansas that the plaintiff in an action for indemnity from the primary tort feasor is entitled to recover the amount expended in the previous action, together with interest on such amount. Missouri, Kansas & Texas Railway Co. v. Missouri Pacific Railway Co., 103 Kan. 1, 175 P. 97.
 
 
 11
 Coming to the appeal of Farmers Mutual, the primary contention urged for reversal of the judgment entered in the garnishment proceeding is that the policy of insurance issued by Farmers Mutual to Prickett did not afford Donald any insurance coverage during the trip lease operation in which Donald was engaged at the time of the accident. An endorsement attached to the policy is relied upon to sustain the contention. The substance of the endorsement was that the insurance should not inure directly or indirectly to the benefit of any lessee or bailee, or his employees or agents, liable for loss or damage either to property or persons as the result of the use of any of the equipment insured under the policy; and that in the event the lessee or bailee of any of the insured equipment had insurance against loss under any of the coverages of the policy which was available to the named insured, the insurance of the named to him, should be only the excess over and above such other available insurance. It is the settled law in Kansas that a policy of insurance which is free from ambiguity must be construed according to its terms taken at their plain, ordinary, and accepted sense. But if the terms of a policy are ambiguous, obscure, or open to different constructions, the construction most favorable to the insured or other beneficiary must prevail. That general rule applies with particular force to an ambiguous or doubtful provision in a policy or in an endorsement attached thereto which attempts to exclude from coverage liability in certain circumstances. Spence v. New York Life Insurance Co., 154 Kan. 379, 118 P.2d 514, 137 A.L.R. 753; Braly v. Commercial Casualty Insurance Co., 170 Kan. 531, 227 P.2d 571. And as a concomitant to that rule, it is held in Kansas that if an insurer intends to restrict its coverage, it should use language clearly stating its purpose. Chicago, Rock Island and Pacific Railroad Co. v. Aetna Insurance Co., 180 Kan. 730, 308 P.2d 119; Conn v. Walling, 186 Kan. 242, 349 P.2d 925. But like others, the purpose of these rules is to aid the court in arriving at the intent of the parties to the policy. Universal Underwriters Insurance Co. v. Bush, 10 Cir., 272 F.2d 675.
 
 
 12
 Guided by these rules, the court, in its effort to determine the scope and effect of the exclusion provision contained in the endorsement when applied to the pertinent facts here, should take into consideration the language contained in the provision. For a long time, it has been common practice among those engaged in the business of common carrier by motor vehicle to use equipment belonging to others engaged in the business. The practice has embraced a wide variety of arrangements. One of the most common has been the single haul arrangement. And that arrangement has been commonly denominated and called the trip lease arrangement. Those engaged in the business were familiar with the practice and the name by which it was referred to. Of course, it can be assumed that these facts were known to Farmers Mutual and to Prickett. Yet the provision of exclusion contained in the endorsement did not mention in express language trip lease or trip lease arrangement. Neither did it describe with identifiable specification the conventional trip lease arrangement. This silence is a circumstance indicating that the provision was not intended to exclude from the coverage trip lease operations.
 
 
 13
 In addition to the language contained in the endorsement, it is appropriate for the court in determining whether the endorsement had the effect of excluding coverage to Donald at the time of the accident to take into consideration the facts and circumstances preceding and attending the accident. Farmers Mutual was engaged in the business of issuing insurance covering the operation of motor vehicles used as common carriers. Prickett was engaged in that business. Donald was associated with his father in the business and was an additional insured within the scope and meaning of the policy when engaged in the operation of the equipment as part of the business of his father. Holestine gave Donald directions respecting the place at which the cargo of freight was to be obtained in Kansas City, Missouri; gave him directions respecting the place at which it was to be delivered; and delivered to him the emergency clearance certificate specifying the port of entry into Kansas and the route to be followed from the port of entry to the point of destination. But otherwise, Holestine exercised no control over the transportation. Donald was operating the equipment with his father's consent; was in sole charge of the operation; and was responsible for the operation. And the freight paid by the shipper was to be divided between Donald's father and Holestine. When the language contained in the endorsement and these facts and circumstances are considered together, we think it is clear that the endorsement did not have the effect of excluding coverage to Donald at the time of the accident giving rise to the litigation.
 
 
 14
 Order contentions are advanced for the reversal of each of the two judgments under review. But they are without merit and discussion of them would not serve any useful purpose. The judgments are severally affirmed.