**TRANSAMERICA INSURANCE COMPANY, a corporation, Plaintiff-Appellant,**

v.

**GAGE PLUMBING AND HEATING CO., Inc., a corporation, Defendant-Appellee.**

**No. 429-69.**

United States Court of Appeals, Tenth Circuit.

Nov. 6, 1970.

Charles W. Harris and Windell G. Snow, Wichita, Kan., (Howard G. Engleman, Salina, Kan., with them on the brief), for plaintiff-appellant.

Evart Mills, McPherson, Kan., (James P. Mize, Salina, Kan., with him on the brief), for defendant-appellee.

Before LEWIS, PICKETT and HICKEY,* Circuit Judges.

PICKETT, Circuit Judge.

Transamerica Insurance Company (Transamerica, appellant), having paid a claim for fire loss on a policy covering a building under construction, brought this action against Gage Plumbing and Heating Co., Inc. (Gage, appellee), a subcontractor on the job, alleging that the fire was caused by the negligence of Gage's employees, and that Gage was therefore liable to Transamerica as a subrogee of the insured. The trial court sustained Gage's motion for summary judgment, holding that Gage was a coinsured under the policy terms and that the doctrine of subrogation was not available to the insurer.

The material facts are not in dispute. Harbin Construction, Inc. (Harbin) was the prime contractor for the construc-

---

* Judge Hickey heard arguments in this case and before his death on September 22, 1970 he agreed to an affirmance, but he did not participate in this opinion.

tion of a three building motel complex at Salina, Kansas. It purchased from Transamerica a standard fire insurance policy in the amount of $450,000 with the "Uniform Standard Builders' Risk Completed Value Form 17C" attached. Harbin and the motel owner were the only insureds named in the policy. Gage's subcontract was for the installation of the plumbing, heating, air conditioning, and ventilating work in the motel. Gage, relying upon the owner's policy, carried no "Builders' Risk Insurance." During the course of construction, a fire destroyed one of the buildings which contained supplies and tools furnished and used by Gage in its work on all the buildings. For the purpose of computing the amount of the fire loss, Gage furnished to Harbin an estimate of his loss totaling $60,922.23. The insurance company objected to the inclusion in this total of the value of the tools and some other items. Later, at a meeting between Harbin, Gage, and representatives of Transamerica, Gage agreed that its estimate, which included value of tools, be reduced to $57,067.32. This amount was included in the proof of loss submitted by the insureds and paid by Transamerica. In the negotiations for the settlement of the total fire loss of $147,133.93, Transamerica allowed for the loss of Gage's materials on the premises valued at $12,560.36. Payment for the total loss, including the aforesaid $12,560.36, was made to the insureds, who then paid Gage.

The parties agreed that the principal question is whether Gage was an insured and that the determination is to be from the provisions of paragraph 2 of the "Uniform Standard Builders' Risk Completed Value Form, No. 17C(2–62)," which reads as follows:

"This policy also covers temporary structures, materials, equipment and supplies of all kinds incident to the construction of said building or structure and, when not otherwise covered by insurance, builders' machinery, tools and equipment owned by the Insured or similar property of others for which the Insured is legally liable, all forming a part of or contained in said building or structure, temporary structures, or on vehicles, or in the open; only while on the premises described or within 100 feet thereof."

Transamerica construes the provision to limit the policy coverage to property owned by the insured and to other specified property for which the insureds are "legally liable." Gage contends that the policy, without limitation, specifically covers all materials, equipment and supplies "of all kinds incident to the construction" of the building or structure, and also covers, if not otherwise insured, the "builders' machinery, tools and equipment owned by the Insured or similar property of others for which the Insured is legally liable." In other words, Gage says that the term, "legally liable," refers to or modifies only that portion of the sentence providing for coverage of "builders' machinery, tools and equipment of others," and does not restrict the general coverage.[1] In reaching its conclusion, the trial court followed the interpretation given similar policy provisions in the case of Louisiana Fire Insurance Co. v. Royal Indemnity Co., 38 So.2d 807, 809 (La.App.1949), where it was said:

"It is true that the indorsement does not provide specifically that the named materials, etc. need not be the property of the named insured. However, the language used, the evident

---

1. In its decision, the trial court said:
 "Again coming to the principal language at issue in paragraph 2 of the endorsement before this Court, it would seem that the plain intent is to cover all aspects of construction and also, if not otherwise covered by insurance, the builders' machinery, tools and equipment owned by the insured, or similar property of others for which the insured is legally liable, which to this Court means that the principal contractor was responsible for any property of the sub-contractors on the premises being constructed."

intent of the parties, and the customs and practices of the building trade all make the conclusion plain that the indorsement covered the building materials and tools brought into the building by the various workmen, sub-contractors, specialists and artisans whose combined handiwork would result in the completed residence."

Transamerica states that the phrase, "owned by the Insured or similar property of others for which the Insured is legally liable," was added to the policy as a result of the *Louisiana Fire* case and was designed to specifically exclude from coverage a subcontractor not named in the policy. Assuming this statement to be true, in view of the general coverage of the provision, the result contended for is not accomplished. If there was an intent to exclude subcontractors, clear language could have been used. Gage argues that even if the exclusionary phrase does relate to the entire clause, its purpose was only to limit coverage of rental equipment which was not otherwise insured and for which Harbin was legally liable. These arguments in themselves illustrate the ambiguity of the clause.

 The policy was issued in Kansas and liability thereunder is to be determined by Kansas law. It is the law of Kansas that the courts will construe the meaning of insurance policies according to the intent of the parties. Prime Drilling Co. v. Standard Accident Insurance Co., 304 F.2d 221 (10th Cir. 1962). In determining the meaning of policy provisions, the Kansas test is "what a reasonable person in the position of the insured would have understood them to mean." Prime Drilling Co. v. Standard Accident Insurance Co., *supra*, 223; Braly v. Commercial Cas. Ins. Co., 170 Kan. 531, 227 P.2d 571, 577 (1951). And, as we said in Prickett v. Hawkeye-Security Insurance Company, 282 F.2d 294, 301 (10th Cir. 1960), 83 A.L.R.2d 1224, 1235:

"* * * It is the settled law in Kansas that a policy of insurance which is free from ambiguity must be construed according to its terms taken at their plain, ordinary, and accepted sense. But if the terms of a policy are ambiguous, obscure, or open to different constructions, the construction most favorable to the insured or other beneficiary must prevail. That general rule applies with particular force to an ambiguous or doubtful provision in a policy or in an endorsement attached thereto which attempts to exclude from coverage liability in certain circumstances. Spence v. New York Life Insurance Co., 154 Kan. 379, 118 P.2d 514, 137 A.L.R. 753; Braly v. Commercial Casualty Insurance Co., 170 Kan. 531, 227 P.2d 571. And as a concomitant to that rule, it is held in Kansas that if an insurer intends to restrict its coverage, it should use language clearly stating its purpose. Chicago, Rock Island and Pacific Railroad Co. v. Aetna Insurance Co., 180 Kan. 730, 308 P.2d 119; Conn v. Walling, 186 Kan. 242, 349 P. 2d 925. But like others, the purpose of these rules is to aid the court in arriving at the intent of the parties to the policy. Universal Underwriters Insurance Co. v. Bush, 10 Cir., 272 F. 2d 675."

See also Sturdy v. Allied Mutual Insurance Company, 203 Kan. 783, 457 P.2d 34 (1969); Fowler v. United Equitable Insurance Company, 200 Kan. 632, 438 P.2d 46 (1968). The broad general rule is that where a clause in a policy is ambiguous it is construed in favor of the insured and against the insurer. Mutual of Omaha Insurance Company v. Russell, 402 F.2d 339 (10th Cir. 1968), cert. denied, 394 U.S. 973, 89 S.Ct. 1456, 22 L.Ed.2d 753; Prickett v. Hawkeye-Security Insurance Company, *supra*; Sturdy v. Allied Mutual Insurance Company, *supra*; Jameson v. Farmers Mutual Automobile Ins. Co., 181 Kan. 120, 309 P.2d 394 (1957); Chicago, Rock Island & Pacific R. Co. v. Aetna Ins. Co., 180 Kan. 730, 308 P.2d 119 (1957); Knouse v. Equitable Life Ins. Co. of Iowa, 163 Kan. 213, 181 P.2d 310 (1947); Baker v. Continental Ins. Co.,

155 Kan. 26, 122 P.2d 710 (1942); School Dist. No. 51 v. North River Ins. Co., 150 Kan. 894, 96 P.2d 610 (1939); Samson v. United States Fidelity & Guaranty Co., 131 Kan. 59, 289 P. 427 (1930). The rule is particularly applicable where the insurer has attempted to limit or restrict the coverage of the policy or establish exclusions. A limitation of coverage can be accomplished only by the use of clear and concise language. Prickett v. Hawkeye-Security Insurance Company, *supra*; Goforth v. Franklin Life Insurance Company, 202 Kan. 413, 449 P.2d 477 (1969); Buchanan v. Employers Mut. Liability Ins. Co. of Wis., 201 Kan. 666, 443 P.2d 681 (1968); Conn v. Walling, 186 Kan. 242, 349 P.2d 925 (1960); Chicago, Rock Island & Pacific R. Co. v. Aetna Ins. Co., *supra*. The ambiguity is further illustrated by Transamerica's original recognition when the loss was settled that Gage was insured under the policy and its position now that it was not an insured. Applying these rules, we agree with the conclusions of the trial court that the policy was intended to cover Gage as a subcontractor, and that Gage was, therefore, a coinsured.[3]

■ In the alternative, Transamerica contends that even if Gage is a coinsured with Harbin under the policy, it still has a right of subrogation as to the fire losses on property not owned by Gage. This contention was an afterthought injected into the record several months after the court's decision by motion to modify the judgment. The motion followed a decision of Judge Doyle in Employers' Fire Insurance Co., Boston, Mass. v. Behunin, 275 F.Supp. 399 (D.C.Colo.1967), wherein it was held that a subcontractor not specifically named as an insured in a building construction policy could be "impliedly entitled only to the benefit of that portion of the insurance proceeds which covered damages to the work in process under his subcontract," and was not immune from all damages caused by its negligence. The court stated:

"The specifications provided a form of property insurance on each participating contractor's work in process and did not purport to insure each contractor against all damages to the building that might result from his negligence." Employers' Fire Insurance Co., Boston, Mass. v. Behunin, *supra*, at 402.

No cases directly in point are cited to support this rule and our research has disclosed none. Apparently Judge Doyle concluded that with a specific requirement that each subcontractor pay his prorata share of a builders' risk insurance policy premium, a subcontractor had a separate and divisible insurance coverage only on his own property; consequently, he was not an insured for any other property. The Transamerica policy in this case protected the insureds, including Gage, for loss on the entire property. Of course, the beneficiaries of the policy could collect only the amount of their losses, but this does not change the policy from being a single policy covering all the property on the premises in which the insurance company assumed the risk that one of its insureds might cause damage to the insured property through negligence.

We do not believe that the Colorado decision necessarily requires a different result in this case, but if it does, we accept the decision of the United States District Court of Kansas interpreting Kansas law [4] to the effect that where an insurance company attempts to recover, as a subrogee, from a coinsured generally covered under the policy, whose negligent act occasioned the loss, the action must fail in the absence of design or fraud on the part of the coinsured, which is not claimed in this case. New Amsterdam Casualty Company v. Homans-Kohler, Inc., 305 F.Supp. 1017 (D. C.R.I.1969); General Ins. Co. v. Stod-

---

3. Liability for the loss of tools belonging to Gage is not now an issue in the case.

4. Freeman v. Heiman, 426 F.2d 1050 (10th Cir. 1970).

dard Wendle Ford Motors, 67 Wash.2d 973, 410 P.2d 904 (1966); Louisiana Fire Ins. Co. v. Royal Indemnity Co., *supra*. See also Ussery v. Hanover Insurance Company, 222 So.2d 535 (La.App. 1969); Glens Falls Ins. Co. v. Globe Indemnity Co., 214 La. 467, 38 So.2d 139 (1948); 94 A.L.R.2d 221, 264–265.

Affirmed.