**PACIFIC EMPLOYERS INSURANCE COMPANY, a California Corporation, Plaintiff,**

v.

**P.B. HOIDALE COMPANY, INC.; Employers Mutual Casualty Company; and Lightner–Kanaga Insurance, Inc., Defendants.**

**Civ. A. No. 87–1384–B.**

United States District Court, D. Kansas.

June 24, 1992.

Timothy J. Finnerty, McDonald, Tinker, Skaer, Quinn & Herrington, Wichita, Kan., Debra J. Arnett, [term 10/10/91], Hartley, Nicholson & Hartley, P.A., Paola, Kan., for Pacific Employers Ins. Co.

Jeffery L. Carmichael, [term 10/17/91], Morris, Laing, Evans, Brock & Kennedy, Chtd., Wichita, Kan., for P.B. Hoidale Co., Inc.

Eldon L. Boisseau, Turner & Boisseau, Chartered, Wichita, Kan., for Employers Mut. Cas. Co.

Floyd E. Gehrt, [term 10/17/91], William A. Larson, [term 10/17/91], Gehrt & Roberts, Chartered, Topeka, Kan., for Lightner–Kanaga Ins., Inc.

## MEMORANDUM AND ORDER

BELOT, District Judge.

This matter is before the court for the purpose of determining the amount of damages to be awarded upon entry of judgment, and on the motion of defendant Employers Mutual Casualty Company ("Employers") for leave to inquire of the jury. (Doc. 43). The underlying facts of this case have previously been set forth. 782 F.Supp. 564; Order of April 1, 1992 (789 F.Supp. 1117).

## I. BACKGROUND

In its April 1, 1992 order, the court ruled that plaintiff Pacific Employers Insurance Company ("Pacific") was subrogated to the right of P.B. Hoidale, Inc. ("Hoidale") to maintain Hoidale's bad faith and/or negligence claim against Employers. (Doc. 339, at 7). The matter proceeded to trial, and on May 18, 1992, the jury returned a verdict in favor of Pacific by answering special interrogatories. The jury found that Employers or its agents had acted negligently or in bad faith in its defense of its insured, Hoidale, against whom a judgment had been rendered in Sedgwick County District Court. (*Cletus Doll v. P.B. Hoidale*). The court deferred entering judgment on the verdict pending further briefing from the parties regarding the amount of damages to be awarded.

It is well-settled in Kansas that an insurer who acts negligently or in bad faith in defending or settling an action against its insured may be held liable for the full amount of its insured's resulting loss, even if that amount exceeds the policy limits. *Bollinger v. Nuss*, 202 Kan. 326, 332 & syl. ¶ 1, 449 P.2d 502 (1969); *Smith v. Blackwell*, 14 Kan.App.2d 158, 164, 791 P.2d 1343 (1989), *review denied*, 246 Kan. 769 (1990). In the usual case, the "resulting" loss to the insured is the full amount of the judgment in the underlying action. *See DiBlasi v. Aetna Life & Casualty Ins. Co.*, 542 N.Y.S.2d 187, 192–93, 147 A.D.2d 93 (1989); *cf. Frankenmuth Mutual Ins. Co. v. Keeley*, 436 Mich. 372, 461 N.W.2d 666 (1990) (damages for bad faith in settling are limited by insured's ability to pay judgment). In this case, however, Hoidale—as the judgment debtor—and the plaintiff in the state court action entered into a settlement and release agreement whereby Hoidale agreed to pay the plaintiff $1,350,000 in insurance proceeds, and the plaintiff agreed to release Hoidale from liability for the judgment of $1,715,256. In conjunction with the settlement agreement, the parties herein entered into a September 13, 1988

agreement, which set forth the terms under which each party would by liable for the reduced amount of $1,350,000. Thus, in order to determine what loss has "resulted" to Pacific from the bad faith of Employers, the court must examine the terms of this latter agreement.

The September 13, 1988 agreement was executed by Hoidale; Employers (Hoidale's primary carrier); Pacific (Hoidale's excess carrier); and Employers Reinsurance Corporation ("ERC")—the insurance carrier for Lightner–Kanaga Insurance, Inc. (Hoidale's insurance agent). By the terms of this agreement, each party contributed the following amount to a fund created for the purpose of settling Doll's judgment against Hoidale:

| | |
|---|---|
| Hoidale: | $0.00 |
| Employers: | $800,000.00 |
| Pacific: | $300,000.00 |
| ERC: | $250,000.00 |

(Bench Exh. E–881, at p. 1, ¶ 1).

The ultimate liability for the contributions to the settlement fund, however, was made contingent upon the outcome of the present litigation. The September 13, 1988 agreement provides in relevant part:

> [T]he parties agree that it is to their mutual benefit to create a settlement fund to settle the State Action by joint contribution to said settlement fund while reserving for determination in the Federal Action the question of which party is liable or responsible for payment of the judgment rendered against Hoidale in the State Action and such other questions which may arise under law in the Federal Action; ....
>
> ....
>
> 2. REIMBURSEMENT. Except as provided for in paragraph 3, any party who has contributed to the settlement fund shall be entitled to reimbursement for the amount contributed, plus interest at the statutory rate of interest for judgments in the United States Court for the District of Kansas *if such party is finally adjudicated* in the Federal Action not to be liable or responsible for payment of any portion of the judgment rendered against Hoidale in the State Action. Interest shall accrue from the date of this

Agreement. The reimbursement shall be paid on a pro rata basis by that party or those parties *found to be responsible or liable for the judgment* rendered against Hoidale in the State Action.

(Bench Exh. E–881, at pp. 1–2) (emphases added).

The September 13, 1988 agreement also continued in effect the terms of a Memorandum Agreement of October 29, 1987, whereby the same parties had agreed to purchase a supersedeas bond in order to stay execution of the judgment against Hoidale. The October 1987 Memorandum Agreement provides in relevant part:

> [A]ny party who has contributed to the purchase of the Appeal bond for the State Action, shall be entitled to reimbursement for that premium cost, plus interest at the statutory rate of interest for judgment in the event that such party is *finally adjudicated* in the Federal Action to not be liable or responsible for payment of any portion of the judgment rendered against P.B. Hoidale in the State Action.
>
> ....
>
> [S]uch parties *adjudicated to be liable* in the Federal Action shall reimburse any parties found not [to] be liable in such action any and all amounts paid by or collected from such party or parties found to not be liable in the Federal Action.

(Bench Exh. E–882, at pp. 2–3, ¶¶ 2, 4) (emphases added). Pursuant to this agreement, Pacific and ERC each contributed $3,147.00 to pay the cost of a premium on the purchase of a supersedeas bond.

Although Pacific only contributed $300,000 to the settlement fund, and $3,147 to the purchase of the supersedeas bond, Pacific contends that a separate agreement between it and ERC also entitles Pacific to reimbursement for the amounts contributed by ERC. By a contract dated July 12, 1991, Pacific, Hoidale, and Lightner–Kanaga agreed to dismiss all of their respective claims against each other in the present action. This agreement resolved all claims against Lightner–Kanaga, against whom

Employers had never made any claim, and the court therefore dismissed Lightner–Kanaga from this lawsuit. (Doc. 300). In consideration of Pacific's dismissal of its claim against Lightner–Kanaga, and Pacific's agreement to pay $165,000 to ERC, ERC assigned to Pacific the rights of ERC to reimbursement under the September 13, 1988 agreement and the October 29, 1987 Memorandum Agreement.

## II.  OBJECTIONS AND ARGUMENTS

### A.  *Reimbursement*

■ Employers objects to Pacific's claim to reimbursement for the amounts contributed by ERC. Employers does not challenge ERC's assignment of its reimbursement rights to Pacific, but rather argues that ERC has no reimbursement rights to assign.

Employers contends that ERC—and thus Pacific as its assignee—is entitled to no reimbursement from Employers because the liability of Lightner–Kanaga was never "finally adjudicated," as required under the terms of the September 1988 and October 1987 agreements. According to Employers, the dismissal of Lightner–Kanaga from this lawsuit removed the liability or responsibility of Lightner–Kanaga from consideration. Employers also argues that the July 1991 settlement and assignment between Pacific and Lightner–Kanaga materially altered the terms of the September 13, 1988 reimbursement agreement, to which Employers was a party. Employers contends that the July 1991 settlement had the effect of preventing the presentation of the fault of Lightner–Kanaga and Hoidale to the jury. Thus, because Employers was not a party to the July 1991 settlement, Employers maintains that the "unilateral, material" change effected by the July 1991 agreement on the September 1988 agreement acts to discharge Employers from its obligation to reimburse Pacific for the amount ERC contributed.

The court rejects Employers' argument. Although Lightner–Kanaga was not present as a party at trial, its causal responsibility was fully litigated at trial. In its order of April 30, 1992, the court ruled that the Kansas comparative fault statute does not apply to a cause of action against an insurer for negligence or bad faith in defending. (Doc. 382, at 2–7). Nonetheless, because "fault does play some part in contract actions in that it may bear on the broader question of damages," *Mattingly, Inc. v. Beatrice Foods Co.*, 835 F.2d 1547, 1561 (10th Cir.1987), the court also ruled that Employers could present any evidence in this contract action tending to show that other parties were responsible for the excess verdict. Indeed, the court specifically noted that although Lightner–Kanaga had been dismissed from this action, the "fault" of this absent party might be relevant "insofar as it bears on the issue of damages." (Order of April 30, 1992; Doc. 382, at 9 n. 5).[1] Pursuant to this ruling, the court allowed Employers to present lengthy evidence of the negligence, bad faith, or "unclean hands" of other parties—including Lightner–Kanaga.

Throughout the trial, the court listened for any evidence suggesting that the excess verdict against Hoidale was caused by anything other than Employers' decision not to settle the claim against Hoidale. The court heard nothing. The court also listened for any evidence to refute Pacific's prima facie case that settlement within the primary policy limits could reasonably have been effected. Short of the speculative statements and arguments of Employers' counsel, the court heard nothing. At the close of the evidence, the court invited Employers to indicate any evidence that its decision not to settle—resulting in an excess verdict—would have been any different had Lightner–Kanaga acted with the utmost care and good faith. Employers'

---

1.  Pacific argues that the liability of Lightner–Kanaga was finally adjudicated when the court dismissed this party with prejudice from the lawsuit—with no objection by Employers. Although the dismissal of a party with prejudice is a final adjudication of a party's liability *as to*

*that party,* such a dismissal did not prevent Employers from attempting to prove the causal responsibility of Lightner–Kanaga or any other "phantom defendant." *See McGraw v. Sanders Co. Plumbing & Heating,* 233 Kan. 766, 667 P.2d 289 syl. ¶ 7 (1983).

counsel was unable to direct the court's attention to any such evidence. Although Employers was given every opportunity to produce evidence allowing a jury to find that Lightner–Kanaga had in some way caused the excess verdict, Employers failed to carry its burden. To argue now that the responsibility of Lightner–Kanaga was not fully and finally litigated disregards the labors of five weeks of trial.

Accordingly, the court will overrule Employers' objections to Pacific's claim to reimbursement for the amounts contributed by ERC under the September 1988 and the October 1987 agreements.

### B. *Reasonable Settlement Value*

■ Alternatively, Employers argues that it is only liable for that part of the judgment exceeding the reasonable value for which the Doll case could have been settled, as opposed to the full amount in excess of Employers' policy limits. Although Doll initially offered to settle his claim against Hoidale for the $500,000 primary policy limits, Doll raised his settlement offer to $1,250,000 on the eve of trial upon learning that Hoidale also had an excess policy with Pacific for $2,000,000. Because Doll had raised his settlement offer to an amount in excess of Employers' policy limits of $500,000, Employers contends that no "valid" opportunity to settle within primary limits existed. Thus, Employers now asks the court to find that it can be held liable only for the amount that exceeds the amended settlement offer of $1,250,000.

Employers notes that "[m]ost decisions have held that the excess insurer's measure of damages is the difference between the amount of the adverse judgment against the insured and the amount for which the claim could reasonably have been settled." Lanzone & Ringle, *Duties of a Primary Insurer to an Excess Insurer*, 61 Neb.L.Rev. 259, 267 (1982). In support of this proposition, these commentators quote from the case of *Northwestern Mutual Ins. Co. v. Farmers' Ins. Group*, 76 Cal. App.3d 1031, 143 Cal.Rptr. 415 (1978):

It is settled that recoverable damages for the failure of an insurer to effect reasonable settlement within its policy limits includes the entire amount of the insured's liability to the injured claimant, even though that amount be in excess of the insurer's policy limits.... And we entertain no doubt that an excess insurer which has settled and discharged the insured's liability, may recover from the primary insurer an amount in excess of the primary insurer's policy limits *if the excess insurer can prove the primary insurer's unreasonable refusal to settle within its policy limits resulted in loss to the excess insurer in an amount in excess of the policy limits of the primary insurer it would not otherwise have had.*

*Id.* at 1049–50, 143 Cal.Rptr. at 426, *quoted in* Lanzone & Ringle, *supra*, 61 Neb.L.Rev. at 267 n. 35 (emphasis added).

As the California court recognized in *Northwestern Mutual Ins. Co. v. Farmers' Ins. Group*, recovery for an unreasonable failure to settle requires evidence of a loss that the excess carrier otherwise would not have sustained. Such a loss may be found when the primary insurer unreasonably rejects an existing settlement offer either within primary policy limits, or in some reasonably ascertainable amount that is greater than the primary policy limits but less than the excess policy limits. The cases applying Kansas law, however, have also recognized a second theory as a basis for imposing liability against insurance companies who neglect their fiduciary duties toward their insureds.

In *Covill v. Phillips*, 452 F.Supp. 224 (D.Kan.1978), the court rejected an analysis that would have imposed liability on an insurer for failing to *accept* a settlement offer at a time when no settlement offer was outstanding. *Id.* at 230. Logically, an insurer cannot unreasonably refuse to "accept" a settlement at a time when no settlement offer exists. The court in *Covill* went on to find, however, that the insurer was liable for its unreasonable failure to *initiate* further settlement negotiations at a time when it would have been prudent to do so. 452 F.Supp. at 234–40. *Accord*

*Farmers Ins. Exchange v. Schropp,* 222 Kan. 612, 567 P.2d 1359 syl. ¶¶ 4 & 6 (1977).

Moreover, *Covill* recognized that a relaxed standard of proof governs the award of damages upon a finding of a negligent failure to initiate settlement negotiations. Relying on *Coleman v. Holecek,* 542 F.2d 532 (10th Cir.1976), *Covill* ruled that a plaintiff who establishes his claim of a negligent failure to initiate settlement negotiations need introduce *no* evidence that reasonable attempts to settle would have resulted in an amount less than the judgment ultimately entered. 452 F.Supp. at 240. In effect, an insurer is not allowed to shield itself from liability by using an uncertainty of its own making as a defense. *Id.* By " 'gambling with either the excess carrier's money or the insured's money, or both,' " *Continental Casualty Co. v. Reserve Ins. Co.,* 307 Minn. 5, 10, 238 N.W.2d 862, 865 n. 7 (1976) (quoting Bloom, *Recovery against Primary Insurer by Excess Carrier for Bad Faith or Negligent Failure to Settle,* 36 Ins. Counsel J. 235, 237), the primary carrier bears the risk of its gamble: liability for the full excess judgment.[2]

Viewed in the context of Kansas law and the facts of this case, the court finds no merit to Employers' argument. The court has no quarrel with the abstract proposition stated by Employers: an excess carrier is not entitled to the full amount of judgment in excess of the primary policy limits *if there is sufficient evidence to support a finding that settlement within the policy limits could not have been effected.* In this case, however, the court finds no such evidence.

Employers relies on the fact that Doll had raised his settlement *offer* to an amount in excess of the primary policy limits. Using this figure, defendant attempts to equate the amount of an offer with "the amount for which the claim could reasonably have been settled." Lanzone & Ringle, *supra,* 61 Neb.L.Rev. at 267. Employers makes this attempt in the face of its complete failure even to initiate settlement negotiations once Doll had raised his offer. Moreover, Doll's lawyer testified that he had authority to settle within the primary policy limits throughout the trial against Hoidale, suggesting that an attempt to engage Doll in settlement negotiations could have yielded a settlement within policy limits. Whether Doll would have ultimately accepted a counter-offer within the primary policy limits is uncertain. But under the rule established in *Coleman,* and applied in *Covill,* the resulting liability for the *full* amount of the excess judgment must be borne by the party who could have eliminated this uncertainty by fulfilling its duties of good faith and due care. *See Continental Casualty Co. v. United States Fidelity & Guaranty Co.,* 516 F.Supp. 384, 391–90 & n. 10 (N.D.Cal.1981) (primary carrier who fails to effect reasonable settlement must rebut a prima facie case of damages by producing evidence that settlement could not have been reached within primary limits, and risk of uncertainty must be borne by party who caused breach).

Employers' argument also invites the court to disturb a finding that was implicit in the jury's verdict. In accordance with *Coleman* and *Covill,* this court instructed the jury that a finding of bad faith or negligence required the plaintiff to prove either:

> (1) That an opportunity to settle *within the primary policy limits* [emphasis added] existed at a time when a reasonable insurance carrier, exercising due

---

**2.** In other contexts, Kansas cases have recognized or indicated the appropriateness of presuming causation when the defendant's wrongful actions have made proof of causation difficult, if not impossible. *Wooderson v. Ortho Pharmaceutical Corp.,* 235 Kan. 387, 681 P.2d 1038, syl. ¶ 11 (presumption of causation from inadequate warning), *cert. denied,* 469 U.S. 965, 105 S.Ct. 365, 83 L.Ed.2d 301 (1984); *Mason v. Texaco, Inc.,* 741 F.Supp. 1472, 1482 n. 5 (D.Kan.1990) (alternative causation against independently acting tortfeasors), *aff'd and remanded,* 948 F.2d 1546 (10th Cir.1991), *cert. denied,* 112 S.Ct. 1941 (1992). In such cases, a prima facie showing of wrongful conduct creates a rebuttable presumption of causation. *Cf. Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 285–86, 97 S.Ct. 568, 575–76, 50 L.Ed.2d 471 (1977) (defendant may rebut prima facie case of causation from civil rights violation).

care and good faith, would have settled the Doll lawsuit; *or* [emphasis in original]

(2) That a reasonable insurance carrier, exercising good faith and due care, would have initiated further settlement negotiations even at a time when Doll and his lawyer had not submitted a settlement offer within the primary policy limits.

Instruction No. 27. If the jury found the former, it necessarily found that Employers wrongfully neglected to settle the Doll lawsuit *within policy limits.*[3] If it found the latter, it also found that Employers unreasonably failed to initiate settlement negotiations, in which event any uncertainty in the settlement value inures to the detriment of Employers.

Finally, even if the court were to agree with the argument now raised by Employers, the court finds that it comes too late. Employers now asks the court to make a finding of fact that the Doll claim could not have been settled for less than $1,250,000. If Employers believed that the facts warranted such a finding, however, it was a matter to be considered by the jury, not the court. With respect to Employers' liability to Pacific, the court submitted a verdict form—without objection from Employers—that posed only one question to the jury: "Do you find that Employers or its agents acted negligently or in bad faith in its defense of its insured, P.B. Hoidale, Inc.?". All parties agreed that if liability were established, the amount of Pacific's damages involved no question of fact and was a matter for the court to determine. *See State Farm Mutual Auto. Ins. Co. v. Schlossberg,* 82 Md.App. 45, 63, 570 A.2d 328, 336–37 (damages in bad faith case were a fixed sum capable of determination by mathematical computation, and no fact issue for jury to decide), *cert. denied,* 320 Md. 222, 577 A.2d 50 (1990); *DiBlasi v. Aetna Life & Casualty Ins. Co.,* 542 N.Y.S.2d 187, 195, 147 A.D.2d 93 (1989) (in bad faith claims against an insurer, "the measure of damages ... is ... fixed and readily ascertainable compensatory damages, namely, the amount of the judgment in the underlying action which is in excess of the policy limits, plus interest"). Employers never identified this as a question of fact, and the court will not find a fact now requested by Employers.

For these reasons, the court concludes that Employers is liable for all amounts contributed by both Pacific and ERC to both the settlement fund created under the September 13, 1988 agreement, and to the supersedeas bond purchase. Such amounts total $550,000.00, plus interest dating from September 13, 1988 until the date on which the Clerk enters judgment herein; and $6,294.00, plus interest dating from October 29, 1987 until the date on which the Clerk enters judgment herein.

## III. MOTION FOR LEAVE TO INQUIRE OF JURY

Employers moves for leave to inquire of the jury for the purpose of assisting Employers in deciding whether to prosecute an

---

**3.** Employers attempts to defeat such a finding by arguing that the initial settlement offers within policy limits were "invalid" because they were based upon the erroneous assumption that Hoidale had only $500,000 of insurance coverage. This argument is flawed for two reasons.

First, it assumes that Doll would not have settled his claim against Hoidale for an amount within primary policy limits even after the time when Doll learned of Hoidale's excess coverage with Pacific. As already discussed, there is no evidence to support such an assumption. The only evidence on this point is the testimony of Doll's counsel that he had authority to settle within primary policy limits throughout the trial.

Second, Employers' argument confuses the distinction between a "void" and a "voidable" contract. A void contract is one which never had any legal binding effect, whereas a voidable contract is one which may be legally avoided at the option of the wronged party. *Black's Law Dictionary* 1574 (6th ed. 1990). It is true that a contract based on a mistake in fact is "voidable," at the option of the innocent party, "[w]here the other party knows or has reason to know of the mistake or where he or she causes the mistake,...." *Coleman,* 542 F.2d at 535. *See also Conn v. Walling,* 186 Kan. 242, 246, 349 P.2d 925 (1960) (insured's alleged fraudulent conduct made policy, at most, voidable, not void). In this case, however, there is nothing in the evidence to suggest that Doll in fact would have exercised such an option.

appeal. According to Employers, inquiry is necessary to determine: (1) whether the jury believed Employers acted in bad faith or whether the jury found against Employers solely because of the negligence of its agent, attorney Dan Bachmann; (2) what specific acts or omissions of Employers and/or its agent, Bachmann, the jury considered in reaching its verdict; and (3) whether the jury was "confused" by the verdict form.

The court finds that the reasons advanced by Employers do not meet the requirements of D.Kan. Rule 123, which requires a showing of good cause to interview jurors. In this connection, the court generally adopts the arguments set forth in Pacific's memorandum in opposition to Employers' motion. (Doc. 417).

Moreover, the reasons suggested by Employers would not be adequate even in the absence of Rule 123. For example, Employers maintains that it needs to interview the jurors in order to decide whether to take an appeal on the legal issue of the court's pretrial ruling that Bachmann was Employers' agent. If the court committed error in its pretrial ruling on this point, (and the court does not believe that it did), a discussion with jurors—who were instructed that Bachmann was Employers' agent—will have no bearing on the Court of Appeals' review of the issue, and therefore, Employers' decision to take an appeal.

The other reasons advanced by Employers for interviewing the jurors are similarly insufficient.

Accordingly, the court overrules Employers' objections to Pacific's proposed order of judgment. Pursuant to Fed.R.Civ.P. 58, the Clerk shall enter judgment against Employers Mutual Casualty Company in favor of Pacific Employers Insurance Company in the amount of $550,000.00, plus interest dating from September 13, 1988 until the date on which the Clerk enters judgment herein; and $6,294.00, plus interest dating from October 29, 1987 until the date on which the Clerk enters judgment herein. Such interest shall be calculated at the rate provided under 28 U.S.C. § 1961(a), (b).

The Clerk shall enter judgment in favor of Employers Mutual Casualty Company on all claims made by P.B. Hoidale, Inc.

Employers' motion for leave to inquire of the jury (Doc. 43) is hereby denied.

IT IS SO ORDERED.